SUBSEQUENT INJURY
FUND, Petitioner,

v.

Joe S. GALLEGOS; General Iron Works; Glendale Insurance Company, and the Industrial Commission of the State of Colorado, Respondents.

No. 86CA0959.

Colorado Court of Appeals,
Div. I.

Oct. 15, 1987.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Laura E. Udis, Asst. Atty. Gen., Denver, for petitioner.

No appearance for respondent Joe S. Gallegos.

Glasman, Jaynes, Carpenter & McBride, Ronald C. Jaynes, Denver, for respondents General Iron Works and Glendale Ins. Co.

No appearance for Industrial Com'n.

METZGER, Judge.

The Subsequent Injury Fund (SIF) seeks review of a final order of the Industrial Commission which ordered it to pay 67% of the permanent total disability benefits payable to Joe S. Gallegos (claimant). We set aside the order and remand with directions.

Claimant was rendered permanently and totally disabled from the combined effect of prior industrial injuries to his knees and a subsequent industrial injury to his back. The back (subsequent) injury was rated as a 33% permanent partial disability as a working unit. The Industrial Commission ordered claimant's employer at the time of the subsequent injury to pay 33% of the total disability benefits provided by § 8–51–107(1), C.R.S. (1986 Repl.Vol. 3B). The SIF was ordered to pay the remaining 67% of permanent total disability benefits pursuant to § 8–51–106(1)(a), C.R.S. (1986 Repl.Vol. 3B).

On review, the SIF contends that the Commission erred in assessing its liability as the remaining portion of a 100% disability, i.e., 100% – 33% = 67%. We agree that liability was incorrectly computed, but do so for reasons other than those asserted by the SIF.

I.

Section 8–51–106(1)(a), C.R.S. (1986 Repl. Vol. 3B) provides:

"In a case where an employee has previously sustained permanent partial industrial disability and in a subsequent injury sustains additional permanent partial industrial disability and it is shown that the combined industrial disabilities render the employee permanently and totally incapable of steady gainful employment and incapable of rehabilitation to steady gainful employment, *then the employer in whose employ the employee sustained such subsequent injury shall be liable only for that portion of the employee's industrial disability attributable to said subsequent injury, and the balance of compensation due such employee on account of permanent total disability shall be paid from the subsequent injury fund....*" (emphasis added)

▆ The effect of this statute is to provide a scheme for apportioning the permanent total disability benefits to which a worker is entitled under § 8–51–107(1), C.R.S. (1986 Repl.Vol. 3B). *McGrath v. Industrial Commission,* 708 P.2d 1382 (Colo.App.1985). In situations covered by the statute, the subsequent employer is not liable for the degree of permanent partial disability sustained by the subsequent injury; rather, it is liable for the portion of the permanent total disability that is attributable to the subsequent injury. *City & County of Denver v. Industrial Commission,* 690 P.2d 199 (Colo.1984); *McGrath v. Industrial Commission, supra.*

Once the portion of permanent total disability attributable to the subsequent injury is determined in terms of percentage, the subsequent employer pays that same percentage of the benefits due under § 8–51–107, C.R.S. (1986 Repl.Vol. 3B), and the SIF pays the remainder. Thus, the Commission erred in assigning a permanent partial disability rating to the subsequent injury and in using that same figure, without further analysis, to ascertain the SIF's liability.

II.

▆ We reject the SIF's proposed procedure for apportioning liability. The SIF contends that the hearing officer should be bound by the permanent partial disability rating(s) carried by the prior qualifying injury(ies), here asserted to be 10%. It further asserts that its percentage of liability should be determined by the ratio which that disability rating bears to the sum of all the permanent partial disability ratings (10% + 33% = 43%). Hence, it contends, its liability should be 23% (10% ÷ 43% = 23%). The employer's liability would be the ratio between the subsequent permanent partial disability rating (33%) and the total of all permanent partial disability ratings (43% ÷ 33% = 77%).

## A.

■ First of all, we note that claimant's prior qualifying injury did not receive a 10% permanent partial disability rating (as a working unit). Instead, the prior permanent partial industrial disability was given a scheduled award pursuant to § 8–51–104(1), C.R.S. (1986 Repl.Vol. 3B). Nonetheless, the SIF asserts, the scheduled award is equivalent to a 10% working unit award when converted under a method outlined in the American Medical Association, *Guide to the Evaluation of Permanent Impairment Guide.* SIF urges that this conversion be accepted despite the fact that the *Guide* is not included in this record, nor is there any evidence of its contents. We reject this assertion; the statements of counsel may not substitute for that which must appear of record. *Loomis v. Seely,* 677 P.2d 400 (Colo.App.1983).

In any event, for the reasons which follow, we conclude that no conversion is necessary.

## B.

Even if we assume that claimant's prior disability does convert to 10% as a working unit, there is no authority in our Workmen's Compensation Act for the rigorous and mechanistic formula proffered by the SIF. Moreover, we find the formula to be inappropriate because it requires an assumption that the prior disability has remained unchanged. To attempt to assess comparative liabilities without considering the improvement or deterioration of the prior disability is to invite an inaccurate apportionment potentially resulting in unfairness to either the subsequent employer or the SIF. We conclude that the apportionment should be based on a determination of the relative contributions of the partial disabilities to the total disability.

Moreover, the SIF's formula attempts to compare disability ratings which have fundamentally different factual predicates and fundamentally different effects. A permanent partial disability rating is ascertained in a context which does not take into account its contributive relationship to a possible future total disability. Moreover, the prior rating may be based, at least in part, on factors which are no longer relevant and/or on facts which are no longer extant at the time the permanent total disability rating is made, *e.g.,* a lack of significant wage loss. *See* § 8–51–108(1)(a), C.R.S. (1986 Repl.Vol. 3B).

Further, we are persuaded that the General Assembly did not intend that a prior rating be used mechanistically in apportioning liability. Had this been intended, the General Assembly could have provided for it. To the contrary, however, § 8–47–102(2), C.R.S. (1986 Repl.Vol. 3B), concerning apportionment of disabilities, provides:

> "[E]xcept that, in the event the provisions of section 8–51–106 are applicable, such apportionment [using the prior permanent partial disability rating] shall not be made."

For these reasons, we conclude that apportionment of liability for permanent total disability pursuant to § 8–51–106, C.R.S. (1986 Repl.Vol. 3B), should be a *de novo* determination based on the relevant circumstances existing at the time of that determination. This holding does not mean that the percentage of SIF liability can never coincide with the prior permanent partial disability rating, but that the portion of SIF liability is not necessarily equivalent to the prior permanent partial disability rating.

The order is set aside and the cause is remanded for such additional hearings as are necessary to apportion liability in the manner set forth herein.

PIERCE and KELLY, JJ., concur.