Caroline R. McKINNEY, Petitioner,

v.

The INDUSTRIAL CLAIM APPEALS OFFICE OF THE STATE OF COLORADO and J.C. Penney Company, Inc., Respondents.

No. 93CE0021.

Colorado Court of Appeals, Div. II.

Feb. 9, 1995.

Rehearing Denied March 23, 1995.

Norton Frickey & Associates, P.C., Janet L. Frickey, Lakewood, for petitioner.

No appearance for respondent Indus. Claim Appeals Office.

Ritsema & Lyon, P.C., Cindy Slevin, Denver, for respondent J.C. Penney Co., Inc.

Douglas A. Thomas, Denver, for amicus curiae Colorado Compensation Ins. Authority.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, for amicus curiae Workers Compensation Educ. Ass'n.

Opinion by Judge CRISWELL.

In this workers' compensation case, the issue presented is whether the definition of permanent total disability contained in § 8–40–201(16.5)(a) (1994 Cum.Supp.) disqualifies a claimant from receiving permanent total disability benefits if the claimant is capable of earning wages in "any" amount. We conclude that it does, and therefore, we affirm the order of the Industrial Claim Appeals Office (Panel).

The claimant, Caroline R. McKinney, age 60, worked for 18 and ½ years for J.C. Penney Co., Inc. As a result of her employment, she developed bilateral shoulder and knee problems and is now unable to return to any occupation for which she has previous training and experience. The parties stipulated that claimant's injury is governed by the 1991 amendments to the Workers' Compensation Act, Colo.Sess.Laws 1991, ch. 219 at 1291 to 1342.

The claimant is restricted from lifting, repetitive motions, stooping, crawling, and prolonged standing or walking. A high school graduate, claimant is below average on finger dexterity and verbal reasoning and is only at the 25th percentile on clerical tasks.

However, the Administrative Law Judge (ALJ), with record support, found that claimant can engage in modified sedentary activities for 4–6 hours per day and that she can obtain part-time, entry-level, unskilled work for approximately $5–6 per hour. Specifically, the ALJ found that "many telemarketing, receptionist clerk, teacher's aide, and home companion jobs will be within claimant's abilities on at least a part-time basis." Accordingly, he concluded that claimant had failed to prove that she is permanently and totally disabled under § 8–40–201(16.5)(a).

On review, the Panel affirmed. The Panel ruled that, in 1991, the General Assembly purposefully adopted a strict definition of permanent total disability (PTD) under § 8–40–201(16.5)(a) so as to lessen the fiscal impact of such benefits on employers. Under the Panel's interpretation, an injured worker is automatically disqualified from PTD benefits if he or she is capable of earning wages in "any" amount.

## I.

Before 1991, the Workers' Compensation Act (Act) provided little guidance for determining PTD. Under former § 8–51–107(2), C.R.S. (1986 Repl.Vol. 3B), a worker was presumptively permanently and totally disabled if he or she suffered:

[t]he loss of both hands or both arms or both feet or both legs or both eyes or of any two thereof ... except ... where the employer or the division obtains suitable employment for such disabled person....

In addition to this standard, the courts had developed a test for assessing permanent disability which required a balancing of various factors, see *Professional Fire Protection, Inc. v. Long*, 867 P.2d 175 (Colo.App.1993), and a determination whether the claimant "retained or would regain efficiency is some substantial degree as a working unit in the fields of general employment". *Byouk v. Industrial Commission*, 106 Colo. 430, 434, 105 P.2d 1087, 1089 (1940); *see also Prestige Painting & Decorating, Inc. v. Mitchusson*, 825 P.2d 1049 (Colo.App.1991); *Hobbs v. Industrial Claim Appeals Office*, 804 P.2d 210 (Colo.App.1990).

The amendments repealed the presumption of PTD under former § 8–51–107(2) for the loss of both hands, both arms, both feet, both legs, both eyes, or any two such body parts. *See* Colo.Sess.Laws 1991, ch. 219, § 8–42–111(2) at 1313. *Cf.* § 8–40–201(16.5)(b), C.R.S. (1994 Cum.Supp.) (presumption reenacted with modifications.)

In addition, PTD was, for the first time, specifically defined under the definitional section of the amended Act as follows:

'Permanent total disability' means the employee is unable to earn *any wages in the same or other employment*. The burden of proof shall be on the employee to prove that *he is unable to earn any wages* in the same or other employment.

Colo.Sess.Laws 1991, ch. 219, § 8–80–201(16.5) at 1293 (emphasis added). It is the

foregoing definition which the Panel and ALJ relied upon in denying PTD benefits to claimant.

Identical language was used in another subsection requiring a permanently disabled employee, who is "capable of rehabilitation" that would enable the employee to "earn any wages in the same or other employment," to accept any employment offered "by the same or other employer." Section 8–42–111(3), C.R.S. (1994 Cum.Supp.).

In addition, however, a new provision was added allowing PTD awards to be reopened if a recipient earns in excess of $4,000 annually, or if he or she regains the ability to return to employment:

> In cases where a claimant is determined to be permanently totally disabled, any such case may be reopened at any time to determine if the claimant has returned to employment. If the claimant has returned to employment and is earning in excess of four thousand dollars per year or has participated in activities which indicate that the claimant has the ability to return to employment, such claimant's permanent total disability award shall cease and the claimant shall not be entitled to further permanent total disability benefits....

Section 8–43–303(3), C.R.S. (1994 Cum. Supp.).

Finally, the amendments enacted a cost of living allowance for PTD periodic payments, a benefit not previously authorized under the Colorado Act. *See Bellendir v. Kezer,* 648 P.2d 645 (Colo.1982). Under this provision the average weekly wage used to compute a claimant's PTD periodic benefit was to be increased by two percent annually, effective each July 1. Colo.Sess.Laws 1991, ch. 219, § 8–42–111(4) at 1313. *Cf.* § 8–42–111(4), C.R.S. (1994 Cum.Supp.) (restricting the cost-of-living allowance to injuries sustained between July 1, 1991, and July 1, 1994.)

## II.

■ Claimant contends that, because she is permanently precluded from working full-time and is unable to earn her pre-injury rate of pay, or to return to any occupation for which she has previous training and experi-ence, she is entitled to an award for PTD. Claimant and amicus curiae Workers Compensation Education Association (WCEA) argue that the Panel's statutory construction is too narrow because it looks solely to § 8–40–201(16.5)(a) without considering other provisions in the Act which need to be harmonized or reconciled with that statutory section.

### A.

Claimant and WCEA first argue that the term "any wages" under § 8–40–201(16.5)(a) must be read in conjunction with the definition of "wages" contained in another subsection of the definitional statute, § 8–40–201(19)(a), C.R.S. (1994 Cum.Supp.). That subsection provides:

> 'Wages' shall be construed to mean the money rate at which the services rendered are recompensed under the contract of hire in force at the time of the injury, either express or implied.

■ The primary goal in construing a statute is to determine and give effect to the intent of the General Assembly. *Monfort, Inc. v. Gonzalez,* 855 P.2d 19 (Colo.App. 1993). If the meaning of a statute is unclear, the court may consider legislative history in interpreting the statute, including comments by legislators and others during discussions of the proposed legislation. *Hurst Construction Co. v. Ramey,* 821 P.2d 858 (Colo.App. 1991).

■ Because the term "wages" has a technical definition under the Act and it is unclear whether the phrase "any wages" in § 8–40–201(16.5)(a) was meant to encompass this technical definition, it is appropriate to resort to legislative history. And, if a strict, literal, or technical interpretation of the words of a statute would lead to a result that is inconsistent with the legislative purpose as reflected in that history, the more restrictive meaning must yield to an interpretation that effectuates the legislative intent. *Frohlick Crane Service, Inc. v. Mack,* 182 Colo. 34, 510 P.2d 891 (1973); *see also Rocky Mountain General v. Simon,* 827 P.2d 629 (Colo. App.1992).

The pertinent amendment significantly altered the law governing both partial and

total permanent disability. *See* Salmon & Salazar, *1991 Update on Workers' Compensation Law,* 20 Colo.Law. 2223 (November 1991). Indeed, as the claimant concedes, the legislative history indicates that the definition of PTD in § 8–40–201(16.5)(a) was intended to "tighten" and restrict eligibility for PTD benefits. *See* House Floor Debate on Senate Bill 218, 58th General Assembly, 1st Session (April 18, 1991); Conference Committee Hearing, 58th General Assembly, 1st Session (May 3, 1991); Hearing in Senate Chambers on Senate Bill 218, 58th General Assembly, 1st Session, (May 6, 1991).

The legislators acknowledged that the cap on permanent partial disability benefits of $37,560 under former Colo.Sess.Laws 1990, ch. 62, § 8–42–110(1)(b) at 493, was too low, leading many partially disabled employees to seek benefits for PTD. To discourage such application, they wanted to increase the cap on permanent partial disability benefits and also to provide a cost of living allowance for the "genuinely" permanently and totally disabled. However, proponents of the amendments argued that neither of these changes was "affordable" unless, at the same time, qualification for PTD benefits was restricted. *See* Conference Committee Hearing, 58th General Assembly, 1st Session (May 3, 1991).

In this context, a reference to the general definition of "wages" in § 8–40–201(19)(a), as the pre-injury "money rate at which the services rendered are recompensed," adds little, if any, significance to the meaning of the phrase "any wages" in § 8–40–201(16.5)(a). Certainly, the term "wages" in this latter statute may refer to a "money rate" for which the employee is to be compensated for services. But, nothing in this definitional statute contains any meaningful suggestion as to the *level* of the "money rate" that is intended by the term "*any* wages."

The only quantitative money rate referred to by § 8–40–201(19)(a) is the pre-injury rate. Hence, if we were to incorporate this wage rate level into § 8–40–201(16.5)(a)'s reference to "any wages," it would mean that any injured worker who is unable to earn his or her pre-injury wage would be entitled to an award of PTD. Such an interpretation, however, would broaden the concept of PTD beyond that which was accepted prior to the 1991 restricting amendments, and its adoption by us would be wholly at variance with the evident legislative intent.

We conclude, therefore, that the phrase "any wages" in § 8–40–201(16.5)(a) cannot encompass the pre-injury wage rate level referred to in § 8–40–201(19)(a).

### B.

Claimant, however, argues that interpreting "any wages" in its ordinary sense leads to inconsistencies with other provisions of the Act. We disagree.

Under the reopening provision added by the 1991 amendments, an award for PTD may be reopened at any time on a showing that the claimant "has returned to employment and is earning in excess of four thousand dollars per year...." Section 8–43–303(3), C.R.S. (1994 Cum.Supp.).

Claimant and WCEA contend that this provision evidences a legislative recognition that PTD recipients can earn up to $4,000 per year. They argue that it is inconsistent and unfair initially to disqualify injured workers from receiving PTD, if they are capable of earning "any wages," while at the same time providing that, once a claimant has been awarded PTD, he or she can earn up to $4,000 annually. We perceive no inconsistency.

The legislative history of the amendments demonstrates that the legislators recognized the difficulty of predicting at the time of adjudication whether someone adjudged to be permanently and totally disabled would ever regain the ability to be reemployed or to earn non-wage income. For example, a disabled individual who was not employable for "wage income" might nevertheless be capable of earning income from activities such as handiwork sales or personal service endeavors. The legislators were of the view that it would be punitive and demoralizing to prohibit such endeavors entirely. *See* Conference Committee Hearing, 58th General Assembly, 1st Session (May 3, 1991).

Hence, the General Assembly sought to allow PTD recipients to earn "some" income,

while at the same time allowing employers to reopen PTD awards if a recipient "has returned to employment and is earning in excess of four thousand dollars per year" or if the recipient "has participated in activities which indicate that the claimant has the ability to return to employment." Section 8–43–303(3).

The General Assembly might well have concluded that earnings of less than $4,000 per year would not warrant the expenditure of time and administrative resources necessary to adjudicate a petition to reopen. Hence, this provision merely represents an instance in which a legislature has drawn a line based upon practical considerations.

We conclude, therefore, that there is a reasonable basis for distinguishing between an initial award of PTD and the standard for reopening a PTD award. Consequently, the $4,000 earning threshold set forth in § 8–43–303(3) pertains only to a determination whether the claimant has returned to employment after an initial award of PTD benefits.

## C.

Claimant and WCEA also argue that the Panel's construction is inconsistent with the statute governing the Subsequent Injury Fund, § 8–46–101(1)(a), C.R.S. (1994 Cum. Supp.).

When the General Assembly enacted § 8–40–201(16.5)(a), it left unchanged the former standard for PTD, § 8–46–101(1)(a). Under this statute, a worker who has suffered two or more industrial disabilities is considered permanently and totally disabled if he or she is "permanently and totally incapable of steady gainful employment and incapable of rehabilitation to steady gainful employment."

Claimant and WCEA argue that the General Assembly "could not have intended to impose two different PTD standards, one for an individual who only suffered one injury resulting in PTD, and a different standard for an injured worker with two or more injuries resulting in permanent disability." We are not persuaded.

■ The legislative policy underlying § 8–46–101(1)(a) is to provide an incentive for employers to hire partially disabled persons. This policy is effectuated by relieving employers who hire such persons from full responsibility, if the employee suffers a subsequent industrial injury and becomes permanently and totally disabled. In such instances, the total compensation to be paid the employee is divided between the last employer and the Subsequent Injury Fund. *Subsequent Injury Fund v. Thompson,* 793 P.2d 576 (Colo.1990).

Given this legislative purpose, the General Assembly could have concluded that, to facilitate the statute's beneficent purpose, it is necessary to leave in place a less stringent standard for determining PTD in those instances in which benefits to a claimant are to be divided between two responsible parties.

■ We note that the General Assembly has broad discretion in enacting social welfare legislation, and the courts will not interfere in matters of legislative prerogative. *See Bellendir v. Kezer, supra; Naiden v. Epps,* 867 P.2d 215 (Colo.App.1993); *Reynolds v. Industrial Claim Appeals Office,* 794 P.2d 1080 (Colo.App.1990).

## III.

We do not address two of the issues raised on appeal. Parties on both sides have argued whether the General Assembly intended the word "employment" in § 8–40–201(16.5)(a) to encompass both full-time and part-time employment. In addition, amicus curiae WCEA has argued that the Panel's interpretation of § 8–40–201(16.5)(a) is erroneous because it abrogates the so-called "odd-lot doctrine." Because neither of these issues was raised before or decided by the Panel, we decline to address them. *See Monolith Portland Cement v. Burak,* 772 P.2d 688 (Colo.App.1989).

Order affirmed.

STERNBERG, C.J., and ROY, J., concur.