Richard A. CHRISTIE, Petitioner,

v.

COORS TRANSPORTATION COMPANY
and the Industrial Claim Appeals
Office, Respondents,

and

Subsequent Injury Fund, Intervenor.

No. 96SC66.

Supreme Court of Colorado,
En Banc.

March 31, 1997.

Brauer, Buescher, Valentine, Goldhammer & Kelman, P.C., Joseph M. Goldhammer, Ellen M. Kelman, Denver, for Petitioner.

Glasman, Jaynes, McBride & Musgrave, L.L.P., Thomas O. McBride, Christine A. McBride, Denver, for Respondent Coors Transportation Company.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Paul Farley, Deputy Attorney General, David M. Kaye, First Assistant Attorney General, John D. Baird, Assistant Attorney General, State Services Division, Denver, for Respondent the Industrial Claim Appeals Office.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Garth C. Lucero, Deputy Attorney General, Michael P. Serruto, First Assistant Attorney General, Civil Litigation Section, Roxane D. Baca, Assistant Attorney General, Civil Litigation Section, Denver, for Intervenor Subsequent Injury Fund.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, for amicus curiae Workers Compensation Education Association.

Colorado Compensation Insurance Authority, Michael J. Steiner, Denver, for amicus curiae Colorado Compensation Insurance Authority.

Berry & Singer, John Berry, Denver, for amicus curiae Workers' Compensation Coalition.

Chief Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari to determine (a) whether the court of appeals properly refused to interpret section 8–40–201(16.5)(a), 3B C.R.S. (1995 Supp.), in light of section 8–43–303(3), 3B C.R.S. (1995 Supp.); and (b) whether the court of appeals properly refused to interpret section 8–40–201(16.5)(a) *in pari materia* with section 8–46–101(1)(a), 3B C.R.S. (1995 Supp.). The court of appeals determined that these three statutory provisions are to be read separately. The court of appeals thus held that the three

classifications for determining permanent total disability benefits found in these statutory provisions do not violate equal protection guarantees of the United States and Colorado Constitutions. We affirm, although we do so on grounds different from that of the court of appeals.

## I.

On August 20, 1991, Richard A. Christie (Christie) injured his lumbar, thoracic, and cervical spine during the course of his employment as an over-the-road truck driver for Coors Transportation Company (Coors). Coors admitted liability for Christie's injury and paid medical benefits, temporary total disability benefits, and temporary partial disability benefits up to the date that Christie reached maximum medical improvement. Thereafter, Coors admitted liability for a permanent partial disability of thirty-one percent.

Following his injury, Christie returned to work at Coors on a physically restricted basis. Christie continued to work for Coors until January 20, 1992, when he was discharged for cause for fighting with a fellow employee. Christie looked for, but was unable to find, suitable employment. Christie subsequently initiated a claim against Coors for permanent total disability (PTD) benefits.

Christie underwent a functional capacity evaluation, which determined that he was capable of working eight hours a day if he worked within certain physical restrictions. Both Christie and Coors then solicited the opinions of vocational experts regarding Christie's ability to work. Although both experts relied upon and interpreted the functional capacity evaluation, they offered conflicting opinions. It was the opinion of Christie's expert that Christie would not be able to earn a wage on a regular and consistent basis and that his estimated vocational impairment was one hundred percent. Conversely, it was the opinion of Coors' expert that Christie could earn wages as an information clerk or office clerk, in the general fields of sales and cashiering, and in the area of telephone operations.

On July 1, 1994, after multiple evidentiary hearings, an administrative law judge (ALJ) determined that Christie did not qualify for PTD benefits. The ALJ found that "although [Christie] may not be efficient in any field of employment, he *does* retain access to specific, identifiable and available employment opportunities and can earn wages in those fields and accordingly is not permanently and totally disabled." The ALJ also denied Christie's request for medical impairment benefits based on a rating of greater than thirty-one percent.

Christie appealed to the Industrial Claim Appeals Office, which affirmed the ALJ's ruling. Christie then appealed to the court of appeals, which also affirmed the ALJ's order. The court of appeals determined that the ALJ properly denied Christie's claim for PTD benefits because section 8–40–201(16.5)(a) allows PTD benefits only when the claimant is unable to earn *any wages*. The court of appeals rejected Christie's assertion that PTD benefits should be awarded when a claimant (a) is able to earn less than $4,000 per year, pursuant to section 8–43–303(3); or (b) is permanently and totally incapable of steady gainful employment, pursuant to section 8–46–101(1)(a).

## II.

Christie contends that, in light of section 8–43–303(3) and section 8–46–101(1)(a), an interpretation of section 8–40–201(16.5)(a) which limits PTD benefits to claimants who are unable to earn *any wages* violates equal protection guarantees of the United States and Colorado Constitutions. We disagree.

A court's primary task in construing a statute is to determine and give effect to the intent of the legislature. *See State v. Hartsough,* 790 P.2d 836, 838 (Colo.1990). To discern legislative intent, a court must look first to the statutory language, giving words and phrases their plain and ordinary meaning. *See id.* If separate clauses in the same statutory scheme may be harmonized by one construction, but would be antagonis-

tic under a different construction, courts should adopt that construction which results in harmony. *See Mountain City Meat Co. v. Oqueda,* 919 P.2d 246, 253 (Colo.1996).

■ In addition to construing the statutory provisions before us, we must also determine whether they violate equal protection guarantees. The Fourteenth Amendment to the United States Constitution provides that "[n]o state ... shall deny to any person within its jurisdiction the equal protection of the laws." The right to equal protection also finds support in the Due Process Clause of the Colorado Constitution. Colo. Const. art. II, § 25. When a statute is subject to an equal protection challenge, the level of judicial scrutiny varies with the type of classification utilized and the nature of the right affected. *See Industrial Claim Appeals Office v. Romero,* 912 P.2d 62, 66 (Colo.1996). Where a legislative classification does not involve a suspect class or an abridgement of a fundamental right triggering strict scrutiny, or where the classification is not a special one triggering an intermediate standard of review, an equal protection challenge must be analyzed under the rational basis standard of review. *See id.* The parties before us agree that the rational basis standard should be applied in this case.

■ Under the rational basis standard, a statutory classification is presumed constitutional and does not violate equal protection unless it is proven beyond a reasonable doubt that the classification does not bear a rational relationship to a legitimate legislative purpose. *See Duran v. Industrial Claim Appeals Office,* 883 P.2d 477, 482 (Colo.1994). In order to establish that a classification violates the equal protection provisions of the federal and state constitutions, the classification must arbitrarily single out a group of persons for disparate treatment and not single out for such treatment other persons who are similarly situated. *See Romero,* 912 P.2d at 66. If any conceivable set of facts would lead to the conclusion that a classification serves a legitimate purpose, a court must assume those facts exist. *See id.* at 67.

A.

■ Christie contends that the court of appeals erroneously refused to interpret section 8–40–201(16.5)(a), 3B C.R.S. (1995 Supp.), in light of section 8–43–303(3), 3B C.R.S. (1995 Supp.).

Section 8–40–201(16.5)(a) of the Workers' Compensation Act provides that an employee has a permanent total disability when "the employee is unable to earn any wages in the same or other employment." In contrast, section 8–43–303(3) (reopening provision) provides for the reopening of PTD cases as follows:

> In cases where a claimant is determined to be permanently totally disabled, any such case may be reopened at any time to determine if the claimant has returned to employment. *If the claimant has returned to employment and is earning in excess of four thousand dollars per year* or has participated in activities which indicate that the claimant has the ability to return to employment, such claimant's permanent total disability award shall cease and the claimant shall not be entitled to further permanent total disability benefits as a result of the injury or occupational disease which led to the original permanent total disability award.

(Emphasis added.) This provision permits employers to reopen a case in which PTD benefits have already been awarded if the claimant has returned to employment and is earning more than $4,000 per year. Pursuant to this provision, employees may continue receiving PTD benefits as long as they are earning less than $4,000 per year.

In *McKinney v. Industrial Claim Appeals Office,* 894 P.2d 42, 45 (Colo.App.1995), a division of the Colorado Court of Appeals addressed the precise issue before us here: whether, in light of the reopening provision, section 8–40–201(16.5)(a) should be read to mean that PTD benefits are to be awarded to claimants who are unable to earn more than $4,000 per year, rather than limited to claimants who are unable to earn *any* wages.

*McKinney* determined that section 8–40–201(16.5)(a) should not be interpreted based on the reopening provision because "there is a reasonable basis for distinguishing between an initial award of PTD [benefits] and the ... reopening [of] a PTD award." *Id.* at 46.

We agree with *McKinney*'s conclusion that the definition of PTD found in section 8–40–201(16.5)(a) should not be interpreted in light of the reopening provision,[1] although we reach that conclusion using a different analysis. While *McKinney* determined that the two statutory provisions are distinguishable due to their different legislative history, we hold that section 8–40–201(16.5)(a) and the reopening provision are distinguishable because they affect persons who are not similarly situated to each other. The purpose of section 8–40–201(16.5)(a) is to define PTD for purposes of initially determining whether a claimant is eligible for PTD benefits. In contrast, the purpose of the reopening provision is to set a standard which employers must meet before a case can be reopened to determine whether an employee who has already been awarded PTD benefits should continue to receive such benefits. In an initial determination, the employee seeks eligibility for PTD benefits, whereas in a reopening, the employer seeks to discontinue the employee's PTD benefits. Because section 8–40–201(16.5)(a) involves employees who seek an initial determination of eligibility for PTD benefits while the reopening provision involves employees who have already been awarded PTD benefits, these two statutory provisions address persons in two distinct stages of the process for determining PTD benefits. Consequently, those persons affected by section 8–40–201(16.5)(a) and

those affected by the reopening provision are not similarly situated. Because the persons affected by the statutory classifications are not similarly situated, the classifications do not violate equal protection guarantees of the United States or Colorado Constitutions.

## B.

██ Christie also asserts that the court of appeals erroneously refused to interpret section 8–40–201(16.5)(a) *in pari materia* with section 8–46–101(1)(a), 3B C.R.S. (1995 Supp.).

As discussed above, section 8–40–201(16.5)(a) defines a permanently and totally disabled employee as one who "is unable to earn any wages in the same or other employment." Moreover, the subsequent injury fund (SIF) provides for permanent total disability benefits as follows:

> In a case where an employee has previously sustained permanent partial industrial disability and in a subsequent injury sustains additional permanent partial industrial disability and it is shown that *the combined industrial disabilities render the employee permanently and totally incapable of steady gainful employment* and incapable of rehabilitation to steady gainful employment, then the employer in whose employ the employee sustained such subsequent injury shall be liable only for that portion of the employee's industrial disability attributable to said subsequent injury, and the balance of compensation due such employee on account of permanent total disability shall be paid from the subsequent injury fund....

---

1. We note that the legislative history of section 8–40–201(16.5)(a) supports our conclusion that the definition of PTD is limited to "any wages" and does not include the reopening provision's $4,000 limit. Both the Colorado House of Representatives and the Senate considered changing the definition of PTD from the inability to earn "any wages" to the inability to earn a certain amount of wages. For example, Representative Reeves moved to amend the Report of the Committee of the Whole to strike "any wages" in the definition of PTD and substitute it with "in excess of two thousand dollars per year." *House Journal*, 58th Gen. Assembly, 1st Reg. Sess., Vol.

2 at 1518 (Apr. 18, 1991). However, the House of Representatives rejected this amendment. *Id.* at 1519. Similarly, a conference committee comprised of representatives and senators considered replacing "any wages" in the definition of PTD with a $6,000 per year cutoff. Conference Committee Hearing, 58th General Assembly, 1st Sess. (May 3, 1991). Like the House of Representatives, however, the conference committee rejected such a standard and adopted the "any wages" standard for defining PTD. *Id.*

§ 8–46–101(1)(a), 3B C.R.S. (1995 Supp.) (emphasis added). In construing the SIF provision, we turn to its history for guidance.

The SIF was created in 1945 and remained relatively unchanged until 1975. *Compare* Colo. Sess. Laws 1945, ch. 164 at 447–48 *with* § 8–51–106, 3 C.R.S. (1973). During that time, the SIF provided PTD benefits only to employees who qualified according to a presumptive definition for PTD.[2] *See* § 8–51–106(1)(a), 3 C.R.S. (1973). In 1975, the General Assembly amended the SIF provision dramatically. *See* Colo. Sess. Laws 1975, ch. 71 at 302. The 1975 amendment, which was almost identical to the current SIF provision, expanded PTD benefits to employees who sustained a previous permanent partial industrial disability which, combined with a subsequent permanent partial industrial disability, resulted in PTD. *See* § 8–51–106(1)(a), 3 C.R.S. (1975 Supp.); *see also City and County of Denver v. Industrial Comm'n*, 690 P.2d 199, 202 (Colo.1984).

From 1975 until 1991, the Workers' Compensation Act did not define PTD. Instead, PTD was defined in *Byouk v. Industrial Comm'n*, 106 Colo. 430, 434, 105 P.2d 1087, 1089 (1940), where this court held that PTD benefits were warranted if the claimant did not "retain[ ] or would [not] regain efficiency in some substantial degree as a working unit in the fields of general employment." In determining whether a claimant was PTD according to the *Byouk* standard, our courts considered the claimant's physical condition, age, industrial history, mentality, education, and availability of work which the claimant could perform.[3] *See, e.g., Professional Fire Protection, Inc. v. Long*, 867 P.2d 175, 177 (Colo.App.1993) (applying various factors to determine whether injuries sustained in 1987 rendered claimant PTD); *American Metals Climax, Inc. v. Cisneros*, 195 Colo. 163, 167, 576 P.2d 553, 557 (Colo.1978) (holding that factors were illustrative of the types of evidence relevant to PTD determination). Our courts, however, never utilized the SIF provision's "steady, gainful employment" language as a standard for determining whether to award PTD benefits.

In 1991, the legislature recognized the need to statutorily define PTD. The legislature consequently added section 8–40–201(16.5)(a) to the general definitions section of the Workers' Compensation Act. *See* Colo. Sess. Laws 1991, ch. 219 at 1293. As discussed above, section 8–40–201(16.5)(a) defines PTD as the inability "to earn any wages," which was intended to be a stricter definition of PTD than that established by our earlier case law. *See* Conference Committee Hearing, 58th General Assembly, 1st Session (May 3, 1991).[4] This statutory definition of PTD is located in section 8–40–201, 3B C.R.S. (1995 Supp.), which provides that the definitions contained therein apply to articles 40 to 47 of the Workers' Compensation Act. Thus, by enacting section 8–40–201(16.5)(a), the legislature adopted a single statutory definition for PTD applicable to *all* provisions of the Workers' Compensation Act, including the SIF provision contained in article 46.[5]

In contrast, the SIF provision simply sets forth a method for apportioning liability between employers and the SIF for permanent

2. Before 1975, an employee presumptively qualified as PTD for purposes of the SIF when the employee had "previously suffered the loss, or total loss of use, of one hand, one arm, one foot, one leg, or the vision of one eye, and, as a result of an accident arising out of and in the course of his employment, he suffers the loss of, or the total loss of the use of, another hand, arm, foot, leg, or the vision of an eye." § 8–51–106(1)(a).

3. These factors were identical to the factors found in the permanent *partial* disability statute. *See* § 8–51–108, 3B C.R.S. (1986). However, when the legislature amended the Workers' Compensation Act in 1990, it repealed all the factors for determining permanent partial disability. *See* Colo. Sess. Laws 1990, ch. 62 at 576.

4. During this conference committee hearing, Representative Neale, the sponsor of the bill defining PTD, characterized the "any wages" language in the bill as a "tight definition" of PTD.

5. The statutory definition supersedes the common law definition. *See Board of County Comm'rs v. Denver Bd. of Water Comm'rs*, 718 P.2d 235, 243 (Colo.1986).

total disabilities sustained by workers from multiple injuries. *See Subsequent Injury Fund v. Gallegos,* 746 P.2d 71, 72 (Colo.App. 1987).[6] Contrary to Christie's assertion, we conclude that the SIF provision's reference to "steady gainful employment" has never represented, and does not currently represent, a different standard for determining PTD. Rather, section 8–40–201(16.5)(a) provides a single statutory definition for PTD applicable to *all* provisions of the Workers' Compensation Act, including the SIF provision. Thus, we disagree with the court of appeals' holding that the SIF provision provides a less stringent standard for determining PTD than does section 8–40–201(16.5)(a), but that the different standards are rationally related to a legitimate state interest. We instead hold that section 8–40–201(16.5)(a) and the SIF provision do not provide separate standards for PTD. Because section 8–40–201(16.5)(a) and the SIF provision do not provide separate standards for PTD, constitutional guarantees of equal protection are not implicated.

### III.

In summary, we hold that the persons affected by section 8–40–201(16.5)(a) and those affected by the reopening provision are not similarly situated. As such, the classifications created by these two statutory provisions do not violate equal protection guarantees of the United States or Colorado Constitutions. We also hold that section 8–40–201(16.5)(a) and the SIF provision do not provide separate standards for PTD and therefore do not implicate equal protection guarantees. We therefore affirm the court of appeals, although we do so on different grounds.

MULLARKEY, J., concurs, and BENDER, J., joins in the concurrence.

Justice MULLARKEY, concurring:

I join the majority's opinion except as to part II A. I disagree with the majority's conclusion in part II A that employees seeking an initial determination of eligibility benefits are not similarly situated to employees whose cases are reopened to determine whether they should continue receiving permanent total disability benefits. In my view, employees seeking an initial determination pursuant to section 8–40–201(16.5)(a), 3B C.R.S. (1996 Supp.) *are* similarly situated to those employees whose cases may be reopened pursuant to section 8–43–303(3), 3B C.R.S. (1996 Supp.). However, because I believe that there is a rational basis for treating these two groups differently that is related to a legitimate state interest, I concur with the result reached by the majority, *i.e.,* that the statutes do not violate equal protection.

### I.

Section 8–40–201 provides that permanent total disability (PTD) "means the employee is unable to earn any wages in the same or other employment." § 8–40–201(16.5)(a), 3B C.R.S. (1996 Supp.). At the initial determination of eligibility for PTD benefits, the burden is on the employee to prove his or her inability to earn *any* wages. *See id.* In contrast, section 8–43–303(3) provides that a permanent total disability case can be reopened when "the claimant has returned to employment and is earning in excess of four thousand dollars per year or has participated in activities which indicate that the claimant has the ability to return to employment." § 8–43–303(3), 3B C.R.S. (1996 Supp.).

As noted by the majority, a statutory classification violates the equal protection provisions of the federal and state constitutions when it arbitrarily singles out a group of persons for disparate treatment while not treating other similarly situated persons in the same manner. *See Industrial Claim Appeals Office v. Romero,* 912 P.2d 62, 66 (Colo.1996). In this case, the claimant ar-

---

**6.** In 1992, the SIF was abolished so that the SIF is no longer liable to claimants who become permanently and totally disabled as a result of combined industrial injuries, if the last injury which contributed to the disability was sustained after July 1, 1993. *See* Colo. Sess. Laws 1992, ch. 238 at 1830.

gued that because the standard for PTD at an initial determination is different from the standard for reopening a PTD proceeding, the statutes necessarily violated equal protection. The majority rejects this argument and summarily concludes that employees seeking an initial determination of eligibility benefits are not similarly situated to employees whose cases may be reopened to determine whether they should continue receiving PTD benefits because these groups of persons are in "two distinct stages of the process for determining PTD benefits." Maj. op. at 1334. While I agree that the claimant's argument is without merit, I disagree with the majority's rationale.

A legislative classification is reasonable if it "includes all persons who are similarly situated with respect to the purpose of the law." J. Tussman & J. tenBroek, *The Equal Protection of the Laws*, 37 Cal. L.Rev. 341, 346 (1949). Therefore, whether persons are similarly situated for equal protection analysis depends on the purpose of the law or laws at issue. The purpose of both section 8–40–201(16.5)(a), 3B C.R.S. (1996 Supp.), and section 8–43–303(3), 3B C.R.S. (1996 Supp.), is to determine whether an injured claimant is eligible for permanent total disability benefits. Further, the claimants in both initial proceedings and reopening proceedings are persons who have been injured on the job, and the key issue in both proceedings is whether the claimant should receive benefits payable to a permanently and totally disabled person.

I find that the majority's differentiation of claimants based on the stage of their proceeding requires too exacting a focus on the procedural aspects of making a PTD determination.[1] The contrasting standards in this case reflect the fact that the evidence available for an initial determination is often different from the evidence available for a reopening proceeding. As such, the classification does not concern the types of persons or groups involved, but rather the procedures that are necessary, given the evidence available at the time of the proceeding, to determine a claimant's ability to earn wages. Thus, I find that the situations of those persons seeking an initial determination of eligibility pursuant to section 8–40–201(16.5)(a) and those persons whose cases may be reopened pursuant to 8–43–303(3) are similar enough to conclude that further analysis of the legislature's basis for the different treatment is necessary.

## II.

When determining whether a statute violates equal protection, the applicable level of judicial scrutiny is dependent upon the type of classification involved and the nature of the right affected. *See Romero*, 912 P.2d at 66. Here, as noted by the majority, the parties before us agree that the rational basis standard should be applied. *See* Maj. op. at 1332. Under that standard, a statutory classification "does not violate equal protection unless it is proven beyond a reasonable doubt that the classification does not bear a rational relationship to a legitimate state purpose." *Id.* The disparity between the standard for an initial determination of permanent total disability and the standard for reopening a PTD proceeding does not violate equal protection because there is a rational basis for the difference that is related to legitimate state interests.

First, as noted by the court of appeals' decision in this case, restricting reopening proceedings to only those cases where a claimant earns more than $4000 is rationally related to the legislative purpose of providing benefits efficiently and with limited litigation. Because the legislature has intentionally made it difficult to initially qualify for PTD benefits, it seems reasonable to protect judicial resources by requiring more substantial evidence that the claimant can return to work and earn wages before allowing an employer to reopen the case.

---

1. *C.f. Duran v. Industrial Claim Appeals Office,* 883 P.2d 477, 480 n. 9 (Colo.1994) (stating that determining whether individuals suffering a complete loss of use of an extremity were similarly situated to individuals suffering from a partial loss of use of an extremity required "too exacting a focus on the injury creating the classification.").

Second, the higher standard for reopening the PTD determination protects claimants who have already met the difficult burden of proving that they are unable to earn any wages. As noted by the court of appeals in *McKinney v. Industrial Claim Appeals Office*, 894 P.2d 42 (Colo.App.1995),

> The legislative history of the [1991] amendments demonstrates that the legislators recognized the difficulty of predicting at the time of adjudication whether someone adjudged to be permanently and totally disabled would ever regain the ability to be re-employed or earn non-wage income.... The legislators were of the view that it would be punitive and demoralizing to prohibit such endeavors entirely.

*McKinney*, 894 P.2d at 45. I find that protecting the ability of injured workers to develop new skills and attempt to earn a limited additional income is a rational basis for applying a different standard for reopening.

Last, the different standard is justified by the different types of evidence available at the two proceedings. At the initial proceeding, the injured employee is required to prove that he or she will be unable to earn any wages. Such proof is made generally through expert testimony which, to a reasonable degree of certainty, attempts to predict the claimant's future ability to secure employment and earn a wage. For example, in this case, an expert retained by the claimant, relying on his interpretation of the claimant's functional capacity evaluation, testified that it was his opinion that the claimant "would not be able to earn a wage on a regular and consistent basis and that his estimated vocational impairment was one hundred percent." Maj. op. at 1332. An expert retained by Coors, utilizing the same functional capacity evaluation, testified that the claimant could earn wages as an information clerk, cashier, or telephone operator. *See id.* Given the subjective quality of these evaluations, an expert's prediction of a claimant's future employment and earning capacity rarely can be made with absolute certainty.

In contrast, when an employer makes a motion to reopen proceedings, objectively verifiable evidence of the injured claimant's earning capacity is often available. The legislature therefore provided that a PTD determination can be reopened only if the claimant actually earns more than $4000 or is involved in activities which indicate an ability to return to employment. Thus, the reopening determination must be based on historical fact which can be determined with certainty. In my view, the availability of historical fact demonstrating a claimant's earning capacity is sufficient justification for the application of a different standard for reopening a PTD determination.

### III.

I agree with the majority that the definition of PTD found in section 8–40–201(16.5) should not be interpreted in light of the reopening provision at section 8–43–303(3). *See* maj. op. at 1333. However, because I find for the purposes of equal protection analysis that the persons involved in an initial determination are similarly situated to those persons whose cases are reopened, I would hold that it is necessary to resolve whether there is a rational basis for treating the two groups of persons differently. Therefore, as opposed to finding that equal protection is not implicated, I would hold that although these groups are similarly situated the reasons for having a $4000 earnings threshold to reopen a PTD award are rationally related to the legitimate purposes of protecting injured workers and efficiently providing workers' compensation benefits. Thus, I concur with the result reached by the majority and join the opinion except as to part II A.

I am authorized to say that Justice BENDER joins in this concurrence.