**Renee DUPONT, Plaintiff–Appellee,**

v.

**James M. PRESTON, D.D.S.,**
**Defendant–Appellant.**

**No. 98CA2480.**

Colorado Court of Appeals,
Div. V.

April 27, 2000.

As Modified on Denial of Rehearing
July 20, 2000.

Certiorari Granted Oct. 10, 2000.

The Leventhal Law Firm, P.C., Beth L. Krulewitch, Denver, Colorado, for Plaintiff–Appellee.

Joel N. Varnell & Associates, J. Gregory Morrell, Greenwood Village, Colorado, for Defendant–Appellant.

McDermott and Hansen, William J. Hansen, Denver, Colorado, for Amicus Curiae Colorado Trial Lawyers Association.

Opinion by Judge CASEBOLT.

In this dental malpractice action arising under the Health Care Availability Act (HCAA), defendant, James M. Preston, D.D.S., appeals the judgment entered on a jury verdict in favor of plaintiff, Renee Dupont. We modify the judgment and, as modified, affirm.

Plaintiff commenced this action to recover damages for injuries she sustained as a result of the dental care defendant provided to her. The jury found in favor of plaintiff and awarded her $240,000 for noneconomic losses, $22,000 for physical impairment, and $34,933.12 for medical expenses. The trial court awarded prejudgment interest and entered judgment on the verdict.

## I.

Defendant first contends the trial court erred in denying his challenge for cause to a prospective juror. We disagree.

Challenges for cause in a civil case are governed by C.R.C.P. 47(e), and are limited to instances in which the potential juror: (1) is incompetent to be a juror; (2) is related within the third degree to any party; (3) is involved in certain relationships with any party; (4) has previously served on a jury or been a witness in a previous trial between the same parties for the same cause of action; (5) has an interest in the outcome of the action; (6) has formed or expressed an unqualified opinion as to the merits of the action; or (7) exhibits enmity or bias concerning either party.

If a potential juror falls within any one of the first five categories listed above, the bias of the juror is implied and the trial court must dismiss the juror. *Safeway Stores, Inc. v. Langdon*, 187 Colo. 425, 532 P.2d 337 (1975). However, a challenge for cause under the remaining two categories requires a showing that the juror is biased in fact. *Action Realty v. Brethouwer*, 633 P.2d 522 (Colo.App.1981).

Sustaining a challenge for cause on grounds other than those provided for in C.R.C.P. 47(e) has the effect of giving the challenging party an additional peremptory challenge, and constitutes reversible error. *Faucett v. Hamill*, 815 P.2d 989 (Colo.App. 1991).

Here, the challenged juror stated that, as a recent law school graduate, he had knowledge concerning provisions of the HCAA, specifically its limitations on damages and the provisions that prevent disclosure of such limitations to the jury. *See* § 13–64–302(1), C.R.S.1999. However, during *in camera* questioning, this juror stated that he would not disclose that information to the other jurors and would be able to disregard the limitations in determining whether to award damages, and the amount, if any, to award.

Defendant nevertheless requested that this juror be excused from the panel for cause

because he had specific knowledge of the damage limitations that were not to be disclosed to the jury. The trial court denied defendant's request.

We perceive no error in the trial court's rejection of defendant's challenge for cause. Despite the fact that the HCAA prohibits disclosure of the limitations on damages to the jury, defendant's basis for the challenge is not one of the enumerated reasons contained in C.R.C.P. 47 for dismissing a potential juror. Thus, the trial court properly denied defendant's request. See *Faucett v. Hamill*, supra (fact that potential juror was a lawyer was not sufficient ground to dismiss for cause because that reason is not listed in C.R.C.P. 47(e)).

## II.

Defendant next contends the trial court erred in instructing the jury that it could make a separate damage award for physical impairment. Specifically, he asserts that § 13–64–204, C.R.S.1999, specifies the categories for which a jury may make an award, and that this statute does not contain a separate category for physical impairment. Therefore, he contends, the General Assembly must have intended to exclude physical impairment as an item of recoverable damage under the HCAA. We disagree.

■ Our primary task in construing a statute is to determine and give effect to the intent of the General Assembly. To discern legislative intent, we look first to the statutory language. *Christie v. Coors Transportation Co.*, 933 P.2d 1330 (Colo.1997).

■ A statute must be construed as a whole and an interpretation must give consistent, harmonious, and sensible effect to all parts of the statute. *City of Grand Junction v. Sisneros*, 957 P.2d 1026 (Colo.1998).

Section 13–64–204 provides, in relevant part:

(1) If liability is found in a trial under [§ 13–64–201, et seq.], the trier of fact, in addition to other appropriate findings, shall make separate findings for each claimant specifying the amount of:

(a) Any past damages for each of the following types:

(I) Medical and other costs of health care;

(II) Other economic loss except loss of earnings;

(III) Loss of earnings; and

(IV) Noneconomic loss.

(b) Any future damages and the period of time over which they will be paid, for each of the following types:

(I) Medical and other costs of health care;

(II) Other economic loss except loss of future earnings which would be incurred for the life of the claimant or any lesser period;

(III) Loss of future earnings which would be incurred for the work life expectancy of the claimant or a lesser period; and

(IV) Noneconomic loss which would be incurred for the life of the claimant or any lesser period.

We agree that this statute does not specifically list physical impairment as an element of recoverable damages. However, neither does the statute expressly describe pain and suffering, loss of enjoyment of life, emotional distress, or other elements of damages. Nevertheless, that does not mean that such damages are not recoverable. Instead, the statute describes "types" of damages that are recoverable, broadly separating four separate types of damage into past and future damages.

Under the plain language of the statute, a plaintiff may recover for "economic" and "noneconomic" past and future losses. Hence, the issue is whether physical impairment is either an economic or noneconomic loss within the meaning of this statute.

Section 13–64–202, C.R.S.1999, contains the definitions that are applicable to the provision at issue, and thus those specific definitions supply the meanings of the words and phrases contained in § 13–64–204. Section 13–64–202(5), C.R.S.1999, defines "noneconomic loss" as "nonpecuniary harm for which damages are recoverable under the laws of this state." Section 13–64–202(1), C.R.S.

1999, defines "economic loss" as "pecuniary harm for which damages are recoverable under the laws of this state." Hence, we must determine whether physical impairment is a recoverable item of damage under Colorado law. We conclude that it is.

For quite some time, Colorado case law has recognized "physical impairment" as a harm for which compensation may be sought and awarded. *Cf. Barter Machinery & Supply Co. v. Muchow,* 169 Colo. 100, 453 P.2d 804 (1969); *Heckman v. Warren,* 124 Colo. 497, 238 P.2d 854 (1951); *Cookman v. Caldwell,* 64 Colo. 206, 170 P. 952 (1918). Further, as defendant admits, the General Assembly explicitly has recognized physical impairment or disfigurement as a separate element of personal injury damages recoverable in tort actions. *See* § 13–21–102.5(5), C.R.S.1999 ("nothing in this section shall be construed to limit the recovery of compensatory damages for physical impairment or disfigurement"); *Herrera v. Gene's Towing,* 827 P.2d 619 (Colo.App.1992).

We also note that the HCAA was adopted in 1988, two years after the General Assembly recognized physical impairment as a recoverable element of damages in § 13–21–102.5. Because the General Assembly is presumed to be aware of laws already existing on the subject when it passes new legislation, *City & County of Denver v. Rinker,* 148 Colo. 441, 366 P.2d 548 (1961), we may presume it intended to recognize physical impairment as a recoverable item of damage under the HCAA.

For these reasons, we conclude that damages for physical impairment are "recoverable under the laws of this state."

Physical impairment may be a harm that results in pecuniary loss. "Pecuniary" in this context means "of or relating to money;" that is, a monetary loss. *Random House Webster's Unabridged Dictionary* 1428 (2d ed.1998). Physical impairment may also be nonpecuniary. *See Matthews v. Industrial Commission,* 627 P.2d 1123 (Colo.App.1980) (some anatomical impairments have no material effect on a person's status in the labor market).

For example, a professional football player whose leg is amputated sustains a physical impairment that would most certainly entail a pecuniary loss. However, the same injury to a theoretical physicist whose work involves primarily critical thinking and analysis might not involve a similar pecuniary loss, but if the scientist's hobby were playing tennis, it would certainly involve a nonpecuniary loss.

Accordingly, physical impairment does not necessarily result in exclusively pecuniary or exclusively nonpecuniary harm. Nonetheless, because it is an element of damages that is "recoverable under the laws of this state" as either economic or noneconomic loss, *see* § 13–64–202(1) & (5), we reject defendant's argument that § 13–64–204 prohibits recovery for physical impairment.

Defendant relies on *Ledstrom v. Keeling,* 10 F.Supp.2d 1195 (D.Colo.1998) to support his contention. We are not persuaded to follow the *Ledstrom* rationale.

In *Ledstrom,* the federal district court concluded that damages for physical impairment were included within the $250,000 limitation on damages for noneconomic injuries specified by § 13–64–302, C.R.S.1999. Here, however, defendant has not asserted the applicability of the damage cap contained in § 13–64–302 concerning the damages the jury awarded. Instead, he has contended that § 13–64–204 prohibits recovery for physical impairment.

Further, the *Ledstrom* court appears to have assumed that "physical impairment" is exclusively a noneconomic loss. As previously noted, a physical impairment does not always neatly fall into the category of either economic or noneconomic loss.

In addition, the *Ledstrom* court applied the definition of "noneconomic" loss found in § 13–21–102.5(2)(b) in determining whether the damage cap in § 13–64–302 would apply to damages awarded for physical impairment. Section 13–64–302 provides:

> The total amount recoverable for all damages for a course of care for all defendants in any civil action for damages in tort brought against a health care professional ... whether past damages, future damages, or a combination of both, shall not

exceed one million dollars, present value per patient, ... *of which not more than two hundred fifty thousand dollars, present value per patient, ... shall be attributable to non-economic loss or injury, as defined in section 13–21–102.5(2)(a) and (2)(b)* ....

(emphasis added).

By its plain language, this provision specifically incorporates and makes applicable the definition of noneconomic loss or injury set forth in § 13–21–102.5, C.R.S.1999.

Section 13–21–102.5(2)(b) provides:

"Noneconomic loss or injury" means nonpecuniary harm for which damages are recoverable by the person suffering the direct or primary loss or injury, including pain and suffering, inconvenience, emotional stress, and impairment of the quality of life....

While we agree that the statutory definition found in § 13–21–102.5(2)(b) is directly incorporated into the damage cap set forth in § 13–64–302(1), that definition is *not* applicable to § 13–64–204. Rather, as previously noted, the definition contained in § 13–64–202 is the one that pertains here. *See* § 13–64–202 (stated definitions apply to "this part 2"); § 13–64–302 (damage cap is contained in "part 3").

Indeed, the definition of "noneconomic" loss contained in § 13–21–102.5(2)(b), as incorporated into § 13–64–302(1), is different from that contained in § 13–64–202. In contrast to the definition prescribed in section 13–64–202, this definition sets forth specific components of noneconomic loss. Under § 13–21–102.5, noneconomic loss or injury means "nonpecuniary harm for which damages are recoverable ... including pain and suffering, inconvenience, emotional stress, and impairment of the quality of life." In contrast, noneconomic loss defined in § 13–64–202 means "nonpecuniary harm for which damages are recoverable in this state."

In our view, the General Assembly had different definitions in mind for both statutes because the statutes serve different purposes. Section 13–64–204 specifies the types of damages that are recoverable and requires the jury to make express findings concerning past and future damages. In this way, the two temporal damage categories (past and future) can be separated and periodic payments of future damages can then be ordered. Section 13–64–302, however, is a damage cap, and by incorporating the provisions of § 13–21–102.5(2)(b), this HCAA provision limits amounts recoverable for very specific items of noneconomic losses; *i.e.*, pain and suffering, inconvenience, emotional stress, and impairment of the quality of life.

■ If possible, we must give effect to every word of the statute. *Charlton v. Kimata,* 815 P.2d 946 (Colo.1991). Our interpretation serves this goal by employing both definitions of noneconomic loss and harmonizing the differing language.

Moreover, the HCAA damage cap applies to "noneconomic loss or injury *as defined in* § 13–21–102.5(2)(a) and (2)(b)." (emphasis added). Accordingly, the HCAA incorporates the language contained in that particular subsection and nothing more. We specifically note that there is no mention of physical impairment contained in § 13–21–102.5(2)(b).

In addition, because physical impairment can involve either pecuniary or nonpecuniary loss, and the literal language of § 13–21–102.5 is applicable only to nonpecuniary harm, that is an additional reason specifically *not* to construe physical impairment as being necessarily included in the definition of noneconomic losses set forth in § 13–21–102.5(2)(b).

For these reasons, we reject defendant's contention that *Ledstrom v. Keeling, supra,* mandates a different result.

Here, the trial court properly instructed the jury to determine separately the amount of past damages attributable to any physical impairment and any future damages allocable to any such impairment. Accordingly, we perceive no error.

### III.

■ Defendant next contends there is insufficient evidence in the record to support the jury's award of $30,000 for future medical expenses. We disagree.

The amount of damages to be awarded is a matter within the sole province of the jury and may not be disturbed unless it is completely without support in the record. The amount of damages awarded may be an approximation, provided that the fact of damages is certain and provided the plaintiff introduces some evidence that is sufficient to permit a reasonable estimation of damages. *Hauser v. Rose Health Care Systems*, 857 P.2d 524 (Colo.App.1993).

Here, defendant acknowledges there was testimony that: (1) plaintiff would need an implant that would cost $1,800 in addition to a crown costing approximately $800 and (2) plaintiff would require one additional dental visit per year for the remainder of her life expectancy of 40 years, or approximately $2,760. Defendant overlooks, however, testimony that the pain plaintiff was experiencing at the time of trial would never completely resolve and that she would have to manage that pain with some kind of medication for the remainder of her life. In addition, plaintiff had consulted a neurologist for the pain she was experiencing, and there was evidence that plaintiff was taking prescription anti-convulsant medication for pain at the time of the trial.

We conclude that there is sufficient evidence in the record to support the jury's award of future medical expenses. The fact that plaintiff would incur future medical expenses was certain. And, the jury had before it some figures for calculating the cost of the future dental procedures, as well as receipts for past bills and prescriptions. Consequently, because the evidence in the record is sufficient to allow the jury to approximate plaintiff's future medical expenses, we decline to disturb that finding. See *Hauser v. Rose Health Care Systems*, supra.

### IV.

■ Defendant next contends that the aggregate amount of damages and interest awarded to plaintiff for noneconomic injuries must be reduced to $250,000 because the statutory limitation on noneconomic damages includes prejudgment interest awarded on those damages. We agree.

In her brief, plaintiff initially contended that defendant had failed to preserve this issue for appeal. However, at oral argument before us, plaintiff withdrew that contention.

As noted previously, § 13–64–302(1), C.R.S.1999, limits noneconomic damages, whether past, present, or future, to $250,000. In addition, § 13–64–302(2), C.R.S.1999, provides that "prejudgment interest ... is deemed to be a part of the damages awarded in the action ... and is included within each of the limitations on liability...." Section 13–64–302(2) was apparently adopted by the General Assembly in response to the supreme court's decision in *Scholz v. Metropolitan Pathologists, P.C.*, 851 P.2d 901 (Colo. 1993), in which the court held that prejudgment interest was not subject to the statutory cap.

Here, based on the jury's verdict, the trial court entered judgment for plaintiff for a total of $296,933.12, of which $240,000 represented noneconomic damages. In addition, the court awarded prejudgment interest at 9% per annum on the total damage award. Because plaintiff may not recover more than $250,000 in noneconomic loss, inclusive of prejudgment interest, and the amount of the damages awarded plus prejudgment interest thereon would improperly exceed $250,000, the amount of prejudgment interest awarded on the noneconomic damages may not exceed $10,000.

### V.

Relying upon § 13–64–205(1)(d), C.R.S. 1999, defendant contends the jury's award of future damages cannot be sustained because plaintiff failed to present expert testimony at trial as to calculation of the present value of the future damages. We disagree.

■ If the legislative intent is immediately apparent based upon the commonly understood and accepted meanings of the statutory language, the statute should be applied as written. *Farmers Insurance Exchange v. Bill Boom, Inc.*, 961 P.2d 465 (Colo.1998).

A statute must be construed as a whole, and an interpretation must give consistent, harmonious, and sensible effect to all parts of

the statute. *City of Grand Junction v. Sisneros, supra.*

■ An interpreting court must give effect to every word of the statute unless the result would be absurd. *Dikeou v. Dikeou,* 928 P.2d 1286 (Colo.1996).

Section 13–64–205(1)(d), C.R.S.1999, provides in pertinent part that "after hearing relevant expert testimony, the jury shall determine the present value of future damages...."

■ Defendant interprets this provision to require the presentation of expert testimony by the plaintiff to permit the jury to fulfill its mandate to reduce the total amount of future damages to present value. He asserts that no evidence was presented to the jury from which it could calculate present value and therefore the amount of the verdict must be remitted by $250,000, the amount of the future damages. Plaintiff responds that the statute does not mandate presentation of expert testimony. We agree with plaintiff.

■ First, § 13–64–202(2), C.R.S.1999, defines "future damages" as "damages of any kind arising from personal injuries which the trier of fact finds will accrue after the damages findings are made." Accordingly, contrary to plaintiff's contention, *all* future damages, whether pecuniary or nonpecuniary, must be discounted to present value.

Second, the statutory language does not specifically require expert testimony. The only thing the provision explicitly requires, by using the word "shall," is determination of present value. *See People v. Guenther,* 740 P.2d 971 (Colo.1987) (the word "shall," when used in a statute, involves a mandatory connotation and is thus the antithesis of discretion or choice).

In other contexts, the General Assembly has expressly required the presentation of expert testimony. *See* § 13–64–401, C.R.S. 1999 (qualifications as expert witness in medical malpractice actions or proceedings); § 13–20–602, C.R.S.1999 (requiring certificate of review in actions against licensed professionals); *Shelton v. Penrose/St. Francis Healthcare System,* 984 P.2d 623 (Colo. 1999). However, it has not done so in § 13–

64–205. And, absent words that command the presentation of expert testimony, we decline to read such a limitation into the statute when its plain language does not warrant it. *See Schlessinger v. Schlessinger,* 796 P.2d 1385 (Colo.1990) (a court should be careful to avoid judicial legislation by adding to a statute that which the legislature did not deem proper); *Jones v. People,* 155 Colo. 148, 393 P.2d 366 (1964) (a court may not change the laws enacted by the legislature); *Digital Equipment Corp. v. Industrial Claim Appeals Office,* 894 P.2d 54 (Colo.App.1995) (court is not at liberty to read non-existent terms into the plain language of a statute).

In our view, the language "after hearing relevant expert testimony" does not dictate a contrary result. The word "relevant," which modifies "expert testimony," suggests court discretion to determine both the need for, and the scope of, such testimony.

Here, neither party presented economic experts to assist the jury in determining present value. However, the jury was properly instructed that all future damages must be reduced to present value. The jury was further instructed that the present value determination should be made by "discounting [damages] by a reasonable commercial rate to today's value." The verdict form contained the jury's present value calculations of all such future damages.

■ A jury is entitled to receive evidence and appropriate mathematical guidance on the method of adjusting future losses to present value. *See Failing v. Burlington Northern Railroad Co.,* 815 P.2d 974 (Colo. App.1991); *Brady v. Burlington Northern Railroad Co.,* 752 P.2d 592 (Colo.App.1988). However, when, as here, there is no evidence introduced during trial as to any particular method of reducing future damages to present worth, the trial court is not required to formulate a method in its instructions but may instead give a general instruction on the jury's duty in this regard. *Failing v. Burlington Northern Railroad Co., supra.* Further, a jury is presumed to be capable of following instructions and presumed to follow a trial court's instructions. *Armentrout v. FMC Corp.,* 842 P.2d 175 (Colo.1992).

For these reasons, we perceive no error. And, in view of this disposition, we need not address which party bears the burden of presenting any expert testimony.

That part of the judgment awarding damages and pre-judgment interest for noneconomic losses is modified to limit the award to $250,000. As modified, the judgment is affirmed.

Judge ROTHENBERG and Judge KAPELKE concur.