**STANDARD FIRE INSURANCE COMPANY, Appellant,**

v.

**Bradley J. RICE, Appellee.**

**No. 10–86–139–CV.**

Court of Appeals of Texas, Waco.

May 21, 1987.

Rehearing Denied June 18, 1987.

L. Hayes Fuller, III, Sheehy, Lovelace & Mayfield, P.C., Waco, for appellant.

Michael Thomas, Martin & Thomas, Mexia, Mac L. Bennett, Bennett & Bennett, Normangee, for appellee.

HALL, Justice.

This is a worker's compensation case. Appellee, the worker, recovered judgment based on a jury verdict for total and permanent disability benefits for an injury to his low back that resulted in the removal of a protruding nucleus pulposis at the L4/L5 intervertebral interspace by chymopapain injection. Appellant, the worker's compensation insurance carrier, brought this appeal on a single point of error asserting that the evidence was factually insufficient to support the jury's finding that the duration of appellee's total incapacity was permanent. We overrule this contention, and we affirm the judgment.

Appellee was born in September, 1953. His height is 6 feet, 7 inches and he weighs 215 pounds. He began working for Nucor Steel at Jewett in October, 1980, as a maintenance electrician. He still has that classification at Nucor. When he first began work there he worked rotating shifts of eight-hour days, working seven evenings in a row and two days off, then seven days in a row and one day off, then seven "graveyard" night shifts in a row and five days off, and then started all over again. These shifts had changed by the time of trial in April, 1986, to this: appellee now works twelve hours a day instead of eight, going to work on Wednesday night at 7:00 p.m. and working until 7:00 a.m., working four nights in a row and three days off, then working three days in a row, 7:00 a.m. to 7:00 p.m., and two days off, then working three "graveyards" and three days off, and then working four days and eight days off. This schedule calls for fifteen working days per month. It had been the schedule for about seven months prior to the time of trial. In addition to the change in work shifts between the time of injury and the time of trial, appellant's work place at Nucor Steel had also changed, and the new work was more strenuous than the old.

Appellee injured his back on January 7, 1984, while lifting and changing a heavy hydraulic cylinder under a gas furnace. He experienced pain in his low back, but he sought no medical attention at that time. A few weeks later appellee aggravated this injury when he was lifting and positioning a hydraulic pump. The day after the second injury, appellee had very little movement in his left leg. On February 12, 1984, he went to a medical clinic in Bryan for treatment. The examining physician diagnosed appellee's problem as lumbar strain and prescribed an anti-inflammatory medication. Pursuant to the physician's instructions, appellee remained off work through February 15, 1984. On February 16th, appellee resumed his duties at Nucor and he worked regularly from then until April 30, 1984. However, appellee continued experiencing pain in his left leg and hip and he was examined on several occasions during this time by his family physician, Dr. William Bilsing at Normangee. Dr. Bilsing diagnosed appellee's problem as iliotibial syndrome, explained to appellee as a "bursitis-like" problem in the left hip. He placed appellee on steroids for correction. This treatment produced only temporary relief.

On April 30th, appellee was examined by Dr. Richard H. Eppright of Houston. Dr. Eppright diagnosed a "protruding nucleus pulposis" and recommended conservative treatment of exercises without medication. However, appellee was unable to return to work and on June 26th he was hospitalized by Dr. Eppright for a lumbar myleogram. The myleogram revealed a herniated nucleus pulposis at the L4/L5 intervertebral disk space. This was treated at the hospital by a chymopapain injection that dissolved the herniated pulposis. Appellee was discharged home on July 5th, to be followed periodically by Dr. Eppright. After a five-week recovery period, appellee was released by Dr. Eppright to return to work on light duty, and he resumed his employment with Nucor on August 13th. On September 6th, Dr. Eppright determined that appellee "should be able to return to full duty by September 18, 1984," with a "fifteen percent general deficiency disability." On September 18th, appellee resumed the same duties he was performing prior to injuring his back. Later, appellee was transferred from the roll mill to the melt shop where he was required to perform more strenuous physical labor. The work shift length and schedule was also later changed as set forth above. From September, 1984, until the time of trial in April, 1986, appellee maintained this employment with Nucor Steel, missing no time from work and earning more money than he did during the same length of time preceding his injury. Additionally, at the time of trial appellee was regularly performing therapeutic exercises and he was jogging between six and nine miles per week. During this time, appellee experienced low back pain following periods of moderate to heavy lifting and unusual amounts of exercise. He indicated these pain experiences at work were limited to three or four per month and required no medical treatment.

Appellee admitted at trial that he was presently performing more strenuous work, working longer shifts and making more money than he was prior to his injury. Additionally, he said he felt physically capable of performing his job, had not had to consult with any doctors for any physical problems associated with performing his job, and was not under a doctor's care for anything related to his physical condition. Nevertheless, appellee expressed concern that if he ever lost his job at Nucor he would be unable to obtain employment elsewhere because of his worker's compensation claim history and the fact that he had undergone back surgery.

The head of the safety department for Nucor told appellee that as a result of his surgery he now has what is known as a "Class 4 back," and that in order to work for any major or reputable employer in appellee's line of work, like Nucor, you have to have what is known as a "Class 1 back." When appellee was initially employed at Nucor, he was required to take a physical. When he returned after his back surgery, a physical was not required since he was already employed there.

Dr. Bilsing testified that he was familiar with the surgical procedure of injecting chymopapain to dissolve deranged disk material and relieve pressure on the nerve. He said he knew two other patients in his practice who had undergone similar chemical surgery and their results had been very poor. When asked if he had an opinion as to whether this surgical procedure would result in any permanent disability for appellee, Dr. Bilsing testified that he thought that this type of treatment is less hard on the patient at the time, but that ultimately the problems will resurface. He expressed the opinion that within a reasonable degree of medical probability appellee does have, and will have, some permanent disability associated with this surgical procedure; that appellee will have some problems with the fact that he does not now have the disk material to cushion the bones in his back from each other; and that, in reasonable medical probability, appellee will have an arthritic condition develop in the surgical area of his back without any additional injury of any sort. Dr. Bilsing testified that based upon his experience of the employment practices of some of the major corporations, like Brown & Root, and the fact that he had done pre-employment

physicals for such corporations in the past, that appellee could not pass the physical requirements of such corporations for a job doing the usual tasks of a workman that involved bending, lifting, stooping and so forth; that if he were to do an employment physical on appellee and found and it was displayed upon examination that appellee had received the chymopapain surgery, it was his opinion that Brown & Root would not employ appellee for a job doing the usual tasks of a workman; that based upon his experience and his understanding of the type of injury that appellee had suffered and the nature of the surgery, he did not believe appellee could get a job doing the usual tasks of a workman with a major company like Brown & Root and Nucor; and that he had never seen a major corporation hire an individual who has had a surgical procedure to his back where the job entailed bending, lifting, stooping and doing hard heavy work.

The safety director at Nucor Steel testified that all prospective employees must take a physical examination before they are employed by Nucor; that it was Nucor's goal that everyone take a physical, hoping to reduce claims, prevent lawsuits and make sure that Nucor gets the most healthy employees; that Nucor has a classification system for a lumbar x-ray that they use on current physical examinations; and that "Class 1" would be considered a normal back, "Class 2" would be modified work and that there are other "Classes 3 and 4." He said that a prospective employee will not be hired by Nucor Steel unless he has a "Class 1 back," and that to his knowledge Nucor had never hired anyone who had experienced back surgery. He said a "Class 4 back" included evidence of back surgery or intervertebral disk surgery. He testified further that there had never been anyone hired at Nucor who had a permanent disability rating by an orthopedic surgeon.

■ The Worker's Compensation Act should be liberally construed in the worker's favor, and if there is any reasonable doubt that may arise in a particular case as to the right of the injured employee to compensation it should be resolved in favor of such right. *Bailey v. American Insurance Company*, 154 Tex. 430, 279 S.W.2d 315, 318 (1955); *Hargrove v. Trinity Universal Ins. Co.*, 152 Tex. 243, 256 S.W.2d 73, 75 (1953). The fact that an injured employee continues to work and earn money after his injury is not a bar to recovery for total and permanent disability, if the evidence supports a finding that he is, in fact, so disabled. *Hartford Accident & Indemnity Company v. Haddock*, 511 S.W.2d 102, 107 (Tex.Civ.App.—Tyler 1974, writ ref'd n.r.e.). This principle applies even where the claimant returns to the same job and receives an increase in pay, because these factors are only a part of the evidence which the jury may consider in answering the issues on incapacity or disability, and they do not preclude an award for total and permanent disability. *Texas Emp. Ins. Ass'n v. Armstrong*, 572 S.W.2d 565, 566 (Tex.Civ.App.—Eastland 1978, no writ).

■ In our case the trial court gave the jury this standard definition of "total incapacity":

"TOTAL INCAPACITY" does not imply absolute inability to perform any kind of labor, but means that one is disabled from performing the usual tasks of a workman, not merely the usual tasks of any particular trade or occupation, to such an extent that he cannot get and keep employment doing the usual tasks of a workman.

The evidence shows that prior to his injury appellee was working eight-hour shifts and that he is now working twelve-hour shifts; that the work he now performs is more physically demanding than the work he performed prior to his injury; that he is earning more money on the job than before his injury; and that he is jogging six to nine miles per week. On the other hand there is undisputed credible evidence that because of the back injury and surgical treatment received by appellee he is permanently disabled from obtaining a job in the market place to perform the usual tasks of his trade, and that if he had not held his job at

Nucor before the injury and surgery he could not get that job.

Recently, in *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986), the Supreme Court said that in order to reverse a judgment on a factual insufficiency point the court of appeals must consider all the evidence in the case and should detail in its opinion the evidence relevant to the issue in consideration and clearly state why the jury's finding is factually insufficient, "why it shocks the conscience; or clearly demonstrates bias"; and, further should state "in what regard the contrary evidence greatly outweighs the evidence in support of the verdict."

In light of the liberal intendment of the worker's compensation statutes in favor of the worker, and following the rules set forth in *Pool v. Ford Motor Co.*, supra, we hold the evidence was factually sufficient to support the jury's finding that the duration of appellee's total incapacity was permanent.

By way of cross point appellee seeks an award of damages from us upon the argument that appellant brought this appeal for delay and without sufficient cause. *See* Rule 84, Tex.Rules App.Proc. We believe this contention is without merit and the requested relief is denied.

The judgment is affirmed.