**Willie HOBBS, Petitioner,**

v.

**The INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE OF COLORADO, and Rockwell International, and Travelers Insurance Company, Respondents.**

**No. 89CA1722.**

Colorado Court of Appeals, Division III.

June 28, 1990.

As Modified on Denial of Rehearing Aug. 9, 1990.

Certiorari Denied Jan. 28, 1991.

Brauer, Buescher, Valentine, Goldhammer & Kelman, P.C., Joseph M. Goldhammer, Ellen M. Kelman, Denver, for petitioner.

The Law Firm of Thomas J. de Marino, Thomas J. de Marino, Ann Holewinski, Denver, for respondents Rockwell Intern. and Travelers Ins. Co.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Carolyn A. Boyd, Asst. Atty. Gen., Denver, for respondent Indus. Claim Appeals Office.

Opinion by Judge NEY.

Claimant, Willie Hobbs, seeks review of a final order of the Industrial Claim Appeals Office (Panel) which affirmed an order of an Administrative Law Judge (ALJ) awarding claimant permanent partial disability benefits of 10.9 percent as a working unit. We set aside the order and remand.

Claimant brought a claim under the workmen's compensation statutes seeking compensation for permanent disability resulting from work-related, beryllium-caused injury to his lungs. The ALJ found that claimant's berylliosis has rendered him "at least 50% physically impaired." He further found as follows:

"[D]ue to claimant's high degree of impairment, he has suffered loss of future earning capacity. The claimant has been unable to bid under his union contract into higher paying jobs because of his physical restrictions. Furthermore, should claimant lose his job at Rockwell for any reason, he would be severely limited in finding other employment because of his physical restrictions and his inability to do hard physical labor. In the event of any lay off in his current position at Rocky Flats, he is incapable either of moving up to the position he formerly held of chemical operator, which now pays $14.22 per hour, because that job would entail exposure to fumes which could aggravate his lung condition or of bumping down to more physically demanding jobs such as janitor, another position he previously held. He is effectively restricted to light duty employment, but every job he has ever held before his current position has required hard physical labor."

The ALJ ultimately determined, however, that "the best evidence of the extent of claimant's disability is a comparison of the $14.22 per hour [he would earn as a pro-

cess chemical worker if not physically impaired] and the $12.67 per hour [he] now earns as a clerk/packer. Claimant has a [permanent] partial disability of 10.9%." Applying Colo.Sess.Laws 1975, ch. 71, § 8–51–108(1)(b) at 303, the ALJ awarded defendant benefits totalling $12,616.97 to be paid at the weekly rate of $84.

On review, claimant contends that the Panel erred in affirming the ALJ's order. He argues the award was in error because it was based soley upon the diminution of his future earnings *with his present employer*, it reflected no consideration of his diminished future employability in the open labor market, and it ignored the ALJ's findings of extensive physical disability. We agree.

As used in the Workmen's Compensation Act (Act), "disability" means loss of earning capacity. *Vail Associates, Inc. v. West*, 661 P.2d 1187 (Colo.App.1982), *aff'd*, 692 P.2d 1111 (Colo.1984). The term "loss of earning capacity," as contemplated by § 8–51–108(1)(b), means the loss of the ability to earn, not simply lost wages. *See State Compensation Insurance Authority v. Industrial Claim Appeals Office*, 786 P.2d 423 (Colo.App.1989).

■ A worker's actual earnings following an industrial accident or occupational disease are relevant but not presumptive evidence of the worker's earning capacity. *Vail Associates, Inc. v. West*, 692 P.2d 1111 (Colo.1984). Nor is a claimant's loss of earnings due to injury or occupational disease dispositive of the amount of his entitlement to permanent partial disability benefits. *State Compensation Insurance Authority v. Industrial Claim Appeals Office, supra*. Instead, such matters are merely individual factors to be considered in determining the existence of impaired earning capacity.

■ Colo.Sess.Laws 1975, ch. 71, § 8–51–108(1)(b) at 303, the statute applicable here, enumerates several factors to be considered in determining permanent partial disability. Implicit in that enumeration is the concept that the future employability of a claimant is a component of his earning capacity. *Vail Associates, Inc. v. West,*

*supra.* Indeed, a permanent disability award may take into account the probability of future earnings impairment caused by an injury even if no actual earnings reduction can be shown at the time of the award, and the failure of a claimant to raise evidence of such a possibility may not be grounds for reopening a workmen's compensation case. *See Lucero v. Climax Molybdenum Co.*, 732 P.2d 642 (Colo.1987).

■ We conclude that the determination of a claimant's impaired earning capacity under § 8–51–108 and the relevant case law must be based upon his employability *in the open labor market, see* 2 A. Larson, *Workmen's Compensation Law,* § 57.21(d) (1989), and not merely ascertained in the limited context of his future employability with his present employer. *See Standard Fire Insurance Co. v. Rice*, 730 S.W.2d 868 (Tex.App.1987) (Despite the fact that claimant worked more hours and did more physically demanding work than he did prior to his injury, he was permanently disabled from obtaining a job in the market place to perform the usual tasks of his trade. Moreover, had he not worked for his present employer before the injury he would not be hired there afterward); *Southern Bell Telephone & Telegraph Co. v. Bell,* 116 So.2d 617 (Fla.1959); *Friedt v. Industrial Accident Board,* 136 Mont. 141, 345 P.2d 377 (1959); *cf. Gunderson v. City of Ashland,* 701 S.W.2d 135 (Ky.1985) (The relevant test is claimant's ability to compete in a normal labor market).

The ability of a claimant to earn occasional wages or perform certain kinds of gainful work does not necessarily rule out a finding of disability nor require that total disability be reduced to partial. To the contrary, total disability may be found in the case of workers who, while not altogether incapacitated for work, are so handicapped that they are not regularly employable in any "well known branch of the labor market."

"The essence of the test is the probable dependability with which [a] claimant can sell his services in a competitive labor market, undistorted by such factors as

business booms, sympathy of a particular employer or friends, temporary good luck, or the superhuman efforts of the claimant to rise above his crippling handicaps."

2 A. Larson, *Workmen's Compensation Law*, § 57.51(a) (1989). Although we recognize that this doctrine applies generally in the context of total disability, we find it persuasive and adopt it and its reasoning, as applicable here, to the award of permanent partial disability benefits.

An order of the Panel must be set aside if findings of fact, although themselves supported by the evidence, do not support the conclusion reached by the panel. *See* § 8–53–120, C.R.S. (1989 Cum.Supp. 3B); *Gruntmeir v. Tempel & Esgar, Inc.*, 730 P.2d 893 (Colo.App.1986) (finding that claimant was unemployable except in his present position inconsistent with finding of 50% permanent partial disability under identical language in predecessor statutes).

█ Here, the ALJ's findings, conclusions, and order included findings that 1) claimant is essentially unemployable in all but his present position as a clerk/packer, 2) he is restricted to light duty employment although all his previous employment required hard physical labor, 3) he is "at least 50% physically impaired," and 4) his permanent partial disability was 10.9 percent. But, the ultimate determination of partial disability was based solely on a comparison of wages earned before and after the injury.

We conclude that, because the ALJ's order was based solely upon a comparison of the pre and post-injury wages of claimant and because the ALJ disregarded evidence and findings of claimant's lack of future employability generally in the open labor market, the ALJ's conclusion as to partial disability is not sustainable under the evidentiary findings entered. *See* § 8–53–120, C.R.S. (1989 Cum.Supp.).

We further conclude that the ALJ did not adequately consider the factors for awarding benefits for claimant's permanent partial disability and that the Panel erred in affirming the order.

The order is set aside, and the cause is remanded for further proceedings consistent with the views expressed herein.

STERNBERG and JONES, JJ., concur.