WELD COUNTY SCHOOL DISTRICT
RE–12 and Colorado Compensation
Insurance Authority, Petitioners,

v.

Deborah Louise BYMER and Industrial
Claim Appeals Office, Respondents.

BRUSH GREENHOUSE PARTNERS and
Colorado Compensation Insurance
Authority, Petitioners,

v.

Ernesto GODINEZ and Industrial Claim
Appeals Office, Respondents.

Martin C. PASILLAS–CARMONA,
Petitioner,

v.

SPADY BROTHERS and Colorado
Compensation Insurance
Authority, Respondents.

Nos. 97SC36, 97SC37 and 97SC227.

Supreme Court of Colorado,
En Banc.

March 9, 1998.

Colorado Compensation Insurance Authority, Michael J. Steiner, Carolyn A. Boyd, Denver, for Petitioners.

The Morrell Law Office, LLC, Britton J. Morrell, Greeley, for Respondent Bymer.

John Berry, Denver, for Amicus Curiae Workers' Compensation Coalition.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Paul Farley, Deputy Attorney General, David M. Kaye, First Assistant Attorney General, John D. Baird, Assistant Attorney General, State Services Section, Denver, for Amici Curiae the Department of Labor and Employment and the Division of Workers' Compensation.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, Mary E. Jeffers, Denver, for Respondent Ernesto Godinez.

Michael W. Seckar, Pueblo, Wilderman & Linnett, P.C., Martin J. Linnet, Denver, for Petitioner.

Colorado Compensation Insurance Authority, Michael J. Steiner, Carolyn A. Boyd, Laurie A. Schoder, Denver, for Respondents.

Justice MARTINEZ delivered the Opinion of the Court.

We consolidated these workers' compensation cases, for purposes of this appeal, to decide what factors may be considered in determining whether a claimant is permanently and totally disabled. Specifically, we granted certiorari to decide whether access to or availability of employment in a claimant's commutable labor market may be considered in determining if a claimant's injury renders the claimant "unable to earn any wages in the same or other employment," pursuant to section 8–40–201(16.5)(a) of the Workers' Compensation Act (the "Act"). *See* §§ 8–40–201 to 8–47–209, 3 C.R.S. (1997). We hold that these factors may be considered in determining a claimant's eligibility for permanent total disability benefits. Therefore, we affirm the judgments of the court of appeals in *Weld County School District RE–12 v. Bymer*, No. 96CA0041 (Colo. App. Oct. 31, 1996) (not selected for publication), and *Brush Greenhouse Partners v. Godinez*, 942 P.2d 1278 (Colo.App.1996), and we reverse the judgment of the court of appeals in *Spady Bros. v. Industrial Claim Appeals Office*, 942 P.2d 1340 (Colo.App.1997).

I.

A.

In 1992, Deborah Bymer worked as a custodian for Weld County School District RE–12 in Grover, Colorado. In October of that year, she sustained a compensable injury to her left wrist and hand. She reached maximum medical improvement ("MMI") in December of 1994. An administrative law judge ("ALJ") determined that, as a result of the injury, Bymer could not use her left upper extremity for grasping, and she experienced pain and loss of sensitivity in that area. The ALJ found that, given her medical impairment, Bymer was unable to find employment in Grover, a rural community in northeastern Colorado. The ALJ also found that the nearest community where Bymer could find employment was Greeley, Colorado, 60 to 65 miles from Grover. The ALJ determined, however, that Bymer was unable to commute to Greeley because her injury prevents her from driving such a long distance. Thus, the ALJ found that Greeley was not within Bymer's "commutable labor market."

The ALJ stated that, because of her injury, geographic residence and limited ability to drive, Bymer was unable to "obtain wages or employment." Consequently, the ALJ concluded that Bymer was entitled to permanent total disability ("PTD") benefits under the Workers' Compensation Act. *See* § 8–40–201(16.5)(a). The insurer, the Colorado Compensation Insurance Authority ("CCIA"), and the employer appealed the ALJ's order on the grounds that the proper test for determining PTD benefits is whether the claimant can earn wages in any labor market, not solely the claimant's commutable labor market.

The Industrial Claim Appeals Office ("ICAO") affirmed the ALJ's award, finding that the ability to earn any wages is a factual determination for the ALJ, and an ALJ may consider the claimant's commutable labor market in reaching this determination. In affirming the ICAO's order, the court of appeals held that an ALJ may consider various "human factors," such as mental training, ability, education, former employment and the community where the claimant resides. *See Weld County Sch. Dist. RE–12 v. Bymer*, No. 96CA0041, slip op. at 2 (Colo.App. Oct. 31, 1996) (*"Bymer"*); *see also Best–Way Concrete Co. v. Baumgartner*, 908 P.2d 1194, 1197 (Colo.App.1995). Both the ICAO and the court of appeals found that the ALJ's determination that Bymer was permanently and totally disabled was supported by substantial evidence in the record, and therefore the ALJ's finding was binding on appeal. *See Bymer*, No. 96CA0041, slip op. at 2–3.

## B.

In February of 1994, Ernesto Godinez sustained a compensable back injury while working as a laborer for Brush Greenhouse Partners in Brush, Colorado. He reached MMI on August 18, 1994. The ALJ found that, as a result of his injury, Godinez suffered continued back pain and had problems with sitting, standing, bending and other routine activities. Thus, the ALJ found that Godinez was physically capable of performing only "light" duty category employment. The ALJ also found that Godinez had: (1) completed only the fourth grade in Mexico, (2) very limited language and mathematics skills, (3) worked primarily as a laborer for his entire life, and (4) no driver's license. The ALJ concluded that Godinez lacked the language and training skills to perform the light duty jobs (*e.g.,* cashier and clerical work) available in the Fort Morgan/Brush area, his reasonable commutable distance from home.

Thus, the ALJ determined that Godinez's physical impairment, lack of education, and limited language and mathematics skills prevented Godinez from accessing "the labor market in the Fort Morgan/Brush area." Because Godinez was unable to secure any employment, the ALJ ruled that he was permanently and totally disabled. Brush Greenhouse Partners and the CCIA appealed, asserting that the proper legal standard to apply to a PTD determination is whether the claimant can earn wages in any employment "anywhere in the United States." Both the ICAO and the court of appeals affirmed the ALJ's order. *See Brush Greenhouse Partners v. Godinez,* 942 P.2d 1278, 1279 (Colo. App.1996) (*"Brush Greenhouse "*). The court of appeals held that the "community where a claimant resides" is among the interdependent factors that an ALJ may consider in a PTD determination, and the record supported the ALJ's award of PTD benefits to Godinez. *Id.*

## C.

On July 15, 1992, Martin Pasillas–Carmona suffered a compensable back injury while working as a farm laborer in Las Animas, Colorado, a rural community two hours from Pueblo. He reached MMI on March 1, 1994.

The ALJ found that, because his injury restricted him to sedentary and light level work, Pasillas could not return to his pre-injury employment. The ALJ further found that Pasillas: (1) completed only the fourth grade in Mexico, (2) could speak and understand little English, and (3) was illiterate in English. Because of Pasillas's injury, educational and language barriers, the ALJ found that Pasillas was not employable in his "local labor market" (Las Animas and other locations within a commuting distance of Las Animas). Thus, the ALJ determined that Pasillas was permanently and totally disabled.

The ICAO affirmed the award of PTD benefits to Pasillas, ruling that the ALJ did not err in considering evidence of Pasillas's education, linguistic ability, transferable skills, physical limitations and local labor market. The court of appeals reversed, stating that "disability is a function of impairment, not geography or job availability." *Spady Bros. v. Industrial Claim Appeals Office,* 942 P.2d 1340, 1342 (Colo.App.1997) (*"Spady Bros."*). The court of appeals held that a claimant's access to employment in the community where the claimant resides or within a reasonable commutable distance from that community may not be considered in determining eligibility for PTD benefits. *See id.*

## II.

## A.

Prior to 1991, the Act did not define PTD; instead, our case law supplied the prevailing PTD standard. In *Byouk v. Industrial Commission,* 106 Colo. 430, 434, 105 P.2d 1087, 1089 (1940), we held that an employee was entitled to PTD benefits if, as a result of a work-related injury, the employee did not "retain[ ] or would [not] regain efficiency in some substantial degree as a working unit in the fields of general employment." *See also Christie v. Coors Transp. Co.,* 933 P.2d 1330, 1335 (Colo.1997) (*"Christie II "*). Applying the *Byouk* standard for PTD, reviewing courts considered various interdependent factors relevant to a claimant's ability to be employed. These various "human" factors

included the claimant's physical condition, mental ability, age, employment history, education, and availability of work that the claimant could perform. *See Christie II,* 933 P.2d at 1335; *Best–Way Concrete,* 908 P.2d at 1196. These PTD factors were essentially identical to the statutory considerations relevant to the determination of permanent partial disability ("PPD"), which included "the general physical condition and mental training, ability, former employment, and education of the injured employee." § 8–51–108(1)(b), 3B C.R.S. (1986); *see Christie II,* 933 P.2d at 1335 n. 3; *Casa Bonita Restaurant v. Industrial Comm'n,* 624 P.2d 1340, 1342 (Colo.App.1981).

In 1991, the General Assembly added a definition of PTD to the Act in section 8–40–201(16.5)(a). *See* ch. 219, sec. 4, § 8–40–201(16.5)(a), 1991 Colo. Sess. Laws 1291, 1293. This section of the Act states that PTD means "the employee is unable to earn any wages in the same or other employment." § 8–40–201(16.5)(a). The 1991 amendments to the Act, in combination with 1990 amendments, also repealed the statutory human factors related to the PPD determination and replaced them with a schedule of injuries and system of medical impairment ratings upon which to base the PPD finding. *See* ch. 219, sec. 15, § 8–42–107, 1991 Colo. Sess. Laws 1291, 1306; ch. 62, sec. 77, title 8, arts. 48–54, 65–66, 1990 Colo. Sess. Laws 468, 576. This consolidated appeal raises the issue of which of these human factors, if any, remain appropriate considerations in a PTD determination in light of the 1991 amendments to the Act.

### B.

■ In construing a statute, the principal duty of a court is to determine and to effect the intent of the legislature. *See State Eng'r v. Castle Meadows, Inc.,* 856 P.2d 496, 504 (Colo.1993); *State v. Hartsough,* 790 P.2d 836, 838 (Colo.1990). To this end, a court should first look to the statutory language and afford the words their plain and ordinary meaning. *See Christie II,* 933 P.2d at 1332. If the language is unclear, a court may look to a variety of sources of legislative intent, including "the object that the legislature

sought to obtain by its enactment, the circumstances under which it was adopted, and the consequences of a particular construction." *State Eng'r,* 856 P.2d at 504. Moreover, because a court presumes that the statute is intended to have just and reasonable effects, a court must construe statutes accordingly and apply them so as to ensure such results. *See id.; Woodsmall v. Regional Transp. Dist.,* 800 P.2d 63, 67 (Colo.1990).

Section 8–40–201(16.5)(a) does not describe the manner in which a claimant may show that he or she is "unable to earn any wages in the same or other employment." Thus, it is not clear from the statutory language which factors may be considered in a PTD determination. It is appropriate, therefore, to look to relevant sources of legislative intent with respect to PTD eligibility.

The legislative history of this amendment indicates that the new definition of PTD was intended to tighten and restrict eligibility for PTD benefits. *See* Hearings on S. 91–218 Before the Conference Committee, 58th Gen. Assembly, 1st Reg. Sess. (May 3–5, 1991); House Floor Debate on S. 91–218, 58th Gen. Assembly, 1st Reg. Sess. (Apr. 18, 1991); *see also Christie II,* 933 P.2d at 1335; *McKinney v. Industrial Claim Appeals Office,* 894 P.2d 42, 45 (Colo.App.1995). The legislature was concerned that claimants were too often inclined to seek PTD benefits, rather than the less generous PPD benefits, in cases where the claimant was only partially disabled. Thus, by enacting the 1991 amendments to the Act, the legislature sought to expand PPD benefits while simultaneously narrowing eligibility for PTD benefits. *See* Hearing on S. 91–218 Before the Conference Committee, 58th Gen. Assembly, 1st Reg. Sess. (May 3, 1991); *McKinney,* 894 P.2d at 45.

■ Another important source of legislative intent is the context in which the legislation was adopted. We presume that, when the General Assembly adopts legislation, it is cognizant of judicial precedent relating to the subject matter under inquiry. *See Vaughan v. McMinn,* 945 P.2d 404, 409 (Colo.1997); *State Eng'r,* 856 P.2d at 504. As discussed above, pre–1991 determinations of PTD were not based on physical disability alone, but included consideration of multiple human fac-

tors. Included among these factors was the availability of work that the claimant could perform. *See Christie II*, 933 P.2d at 1335; *Colorado Fuel & Iron Corp. v. Industrial Comm'n*, 151 Colo. 18, 24, 379 P.2d 153, 156 (1962) ("*CF & I Corp.*"); *Professional Fire Protection, Inc. v. Long*, 867 P.2d 175, 177 (Colo.App.1993). In assessing the availability of such work, an ALJ could consider the community in which a claimant resided. *See Prestige Painting v. Mitchusson*, 825 P.2d 1049, 1050 (Colo.App.1991); *Gruntmeir v. Tempel & Esgar, Inc.*, 730 P.2d 893, 894 (Colo.App.1986).

■ A legislative policy declaration at the outset of legislation also serves as a guide to legislative intent. *See Mountain City Meat Co. v. Oqueda*, 919 P.2d 246, 252 (Colo.1996). Section 8–40–102(1) of the Act provides that the legislature intended the Act to

> be interpreted so as to assure the quick and efficient delivery of disability and medical benefits to injured workers at a reasonable cost to employers, without the necessity of any litigation, recognizing that the workers' compensation system in Colorado is based on a mutual renunciation of common law rights and defenses by employers and employees alike.

§ 8–40–102(1), 3 C.R.S. (1997); *see* ch. 218, sec. 3, § 8–40–102, 1991 Colo. Sess. Laws 1291, 1291. It is within this context of statutory language, legislative intent and case law that the CCIA and the employers in these consolidated cases (collectively, the "Employers") assert that consideration of a claimant's accessible labor market is inappropriate in determining the claimant's PTD eligibility.

### C.

■ No party to these consolidated cases argues that the 1991 amendments to the Act foreclose consideration of all of the human factors relevant to a PTD determination prior to 1991. Rather, the Employers argue that: (1) the claimant's accessible labor market was never an appropriate consideration in pre–1991 PTD determinations, and (2) in either event, the 1991 amendments now prohibit this particular consideration.

The Employers' first argument is not persuasive. As discussed above, pre–1991 PTD determinations unquestionably included consideration of the availability of employment in a claimant's local or commutable labor market. *See Prestige Painting*, 825 P.2d at 1050; *Gruntmeir*, 730 P.2d at 894. This factor was among the various interdependent factors used by ALJs and approved by the courts in making the PTD assessment. Thus, the Employers can prevail in this appeal only by demonstrating that the 1991 amendments preclude consideration of the claimant's accessible labor market.

The Employers assert that, because the legislature intended to tighten PTD eligibility in 1991, the legislature intended to abolish consideration of the claimant's accessible labor market. However, a thorough examination of the legislative history behind section 8–40–201(16.5)(a) belies that conclusion. This history displays the legislature's particular interest in limiting PTD benefits to those unable to earn "any wages," to the exclusion of those who could earn a small amount of wages. On at least two occasions, the legislature explicitly declined to adopt a PTD definition based on the claimant's inability to earn a certain amount of wages, in favor of the stricter "any wages" definition eventually adopted in section 8–40–201(16.5)(a). *See* House Journal, 58th Gen. Assembly, 1st Reg. Sess., Vol. 2 at 1518 (Apr. 18, 1991); Hearing on S. 91–218 Before the Conference Committee, 58th Gen. Assembly, 1st Reg. Sess. (May 3, 1991).

This strict "any wages" definition substantially changed the pre–1991 standard for PTD. Prior to 1991:

> The ability of a claimant to earn occasional wages or perform certain kinds of gainful work [did] not necessarily rule out a finding of disability nor require that total disability be reduced to partial.

*Hobbs v. Industrial Claim Appeals Office*, 804 P.2d 210, 212 (Colo.App.1990); *see also Byouk*, 106 Colo. at 434, 105 P.2d at 1089. Hence, a PTD determination prior to 1991 turned on the claimant's loss of earning capacity or efficiency in some substantial degree in a field of general employment. *See CF & I Corp.*, 151 Colo. at 23, 379 P.2d at

156; *Prestige Painting*, 825 P.2d at 1050. In contrast, under the 1991 definition of PTD, a claimant cannot obtain PTD benefits if he or she is capable of earning wages in any amount. *See Christie v. Coors Transp. Co.,* 919 P.2d 857, 860 (Colo.App.1995) ("*Christie I*"), *aff'd, Christie II,* 933 P.2d at 1336; *McKinney,* 894 P.2d at 45.

Therefore, the legislature's purpose to restrict eligibility for PTD benefits was served by the adoption and application of the strict "any wages" definition in section 8–40–201(16.5)(a). There is no evidence that the legislature intended to go further by abolishing consideration of a claimant's accessible labor market in a PTD determination. In fact, there is reason to believe that the legislature lacked such a sweeping intent. In regards to PPD, the legislature clearly intended to preclude the consideration of various human factors, including the availability of employment. We know this because the legislature explicitly repealed these factors with respect to PPD and replaced them with a specific disability scheme based on a schedule of injuries and medical impairment. *See* ch. 219, sec. 15, § 8–42–107, 1991 Colo. Sess. Laws 1291, 1306; ch. 62, sec. 77, title 8, arts. 48–54, 65–66, 1990 Colo. Sess. Laws 468, 576. As discussed above, we presume that the legislature was aware that the human factors were also being used in PTD determinations. *See generally Vaughan,* 945 P.2d at 409 ("legislature is presumed to be aware of the judicial precedent in an area when it legislates in that area"). Yet, unlike in the PPD amendments, the legislature did not explicitly preclude consideration of these factors in a PTD determination. The legislature's "unwillingness to put into the definition[ ] words which were at its command and which would leave no doubt as to [its] intention" leads us to conclude that legislature did not intend to abolish consideration of these human factors with respect to PTD. *Industrial Comm'n v. Milka,* 159 Colo. 114, 120, 410 P.2d 181, 184 (1966); *see Christie I,* 919 P.2d at 860 (human factors may be considered in post–1991 PTD cases "to the extent that [they] affect[ ] a claimant's ability to earn any wages"); *Best–Way Concrete,* 908 P.2d at 1197 (same); *see generally Vaughan,* 945 P.2d at 408 (stat-ute not presumed to alter common law unless statute expressly provides so).

After concluding that the legislature did not intend to abrogate consideration of the human factors in a PTD case because the legislature did not do so clearly, we find the Employers' additional arguments unpersuasive. As noted, the Employers argue that the 1991 amendments to the Act prohibit consideration of a claimant's accessible labor market, while permitting consideration of the other human factors. We find no support for this new distinction among the recognized human factors.

First, contrary to the Employers' claims, the decision in *McKinney* does not support this distinction. In that case, the claimant argued that the term "wages" in section 8–40–201(16.5)(a) means the pre-injury wage rate described in section 8–40–201(19)(a), 3 C.R.S. (1997). *See McKinney,* 894 P.2d at 45. This argument would mean that that an injured worker would be entitled to PTD benefits if the worker was unable to earn his or her pre-injury wage. After noting that the 1991 amendments to the Act were intended to restrict eligibility for PTD benefits, the *McKinney* court rejected the claimant's argument. *See id.* The court of appeals held that "such an interpretation ... would broaden the concept of PTD beyond that which was accepted prior to the 1991 restricting amendments," and thus would frustrate the legislature's intent. *Id.* In contrast, considering a claimant's accessible labor market does not broaden the PTD concept beyond what was accepted prior to 1991 because the PTD concept included this consideration prior to 1991.

Secondly, allowing this consideration does not lead to unreasonable results contrary to the rules of statutory interpretation. *See generally Woodsmall,* 800 P.2d at 67. The Employers, as well as the court of appeals in *Spady Bros.,* assert that it is unreasonable to treat a claimant with "the same restrictions, injuries, education, and training" differently based on whether he or she lives in an urban or rural area. *Spady Bros.,* 942 P.2d at 1342. On the contrary, we find no logical difference between distinguishing among claimants with the same injuries based on

their access to employment and distinguishing among claimants based on their education, age, mental ability or work experience. The Employers admit that these other factors are appropriate considerations. Because all of these factors relate to the ability of the claimant to "earn wages in the same or other employment," § 8–40–201(16.5)(a), we find no reason to forbid consideration of any particular one of them.

Although the legislature intended the Act to be interpreted so as to assure the "quick and efficient delivery" of benefits "at a reasonable cost to employers," § 8–40–102(1), the 1991 amendments did not alter the benevolent purpose of the Act. The Act remains " 'remedial and beneficent in purpose, and should be liberally construed to accomplish its humanitarian purpose of assisting injured workers and their families.' " *Mountain City Meat Co.*, 919 P.2d at 252. Consideration of a claimant's access to employment in a PTD determination is both reasonable and consistent with the Act's purpose of assisting injured workers who are unable to secure employment.

The Employers also contend that the concept of a claimant's access to employment is unworkable. *See also Spady Bros.*, 942 P.2d at 1342. This contention flows from the fact that this concept lends itself to a variety of labels, ranging from a consideration of a claimant's "commutable labor market," *Bymer*, No. 96CA0041, slip op. at 2, to the "community where a claimant resides," *Prestige Painting*, 825 P.2d at 1050. Indeed, in this very opinion, we have used various labels to describe this concept. The precise label ascribed to this concept is of no great importance, however, because the inquiry remains consistently the same. The crux of the inquiry is whether employment exists that is reasonably available to the claimant given his or her circumstances. This inquiry can only be answered on a case-by-case basis, and will necessarily vary according to the particular abilities and surroundings of the claimant

(*e.g.*, whether and how far the claimant is able to commute).[1]

In addition, the fact that ALJs have been applying this concept for some time undermines the Employers' claim that this concept is unworkable. The concept of reasonably available employment has been employed in PTD determinations, in some form or another, since at least 1986. *See Gruntmeir*, 730 P.2d at 894. Indeed, the ICAO itself believes that:

> ALJ's are fully capable of making reasoned judgments concerning a claimant's employability based on the physical restrictions, the claimant's capacity to travel, the availability of transportation, and the scope of the labor market in the claimant's community.

*Jones v. S & B Stagelines, Inc.*, W.C. No. 4–209 265, Colorado Workers' Compensation Journal 22, 23 (July 1997). Moreover, we find it significant that the ICAO does not believe that section 8–40–201(16.5)(a) precludes consideration of whether employment is reasonably available to the claimant. *See id.* In construing a statute, "deference should be given to the interpretation given the statute by the officer or agency charged with its administration." *Lucero v. Climax Molybdenum Co.*, 732 P.2d 642, 646 (Colo. 1987).

Finally, we find no reason to believe that consideration of reasonably available employment will frustrate the legislature's stated goal of "quick, efficient delivery of [PTD] benefits." § 8–40–102(1). As the records in these consolidated cases demonstrate, vocational experts routinely include this kind of information in their reports to ALJs. The Employers supply no support for the bare assertion that continued use of this information will compromise the efficient delivery of PTD benefits. Accordingly, we decline to adopt the interpretation of section 8–40–201(16.5)(a) advocated by the Employers.

1. For example, in the case of respondent Ernesto Godinez, the ALJ determined that Godinez's injuries and limited vocational abilities prevented him from accessing "the labor market in the Fort Morgan/Brush area." *See* discussion *supra* Part I.B. Given Godinez's educational and linguistic limitations, however, it is unclear whether Godinez could find light duty employment in any community. The crucial determination, therefore, was that no employment was reasonably available to Godinez given his particular circumstances.

### D.

■ In each of these workers' compensation proceedings, the ICAO upheld and adopted the ALJ's findings and conclusions. A reviewing court may set aside an order of the ICAO only upon certain grounds. *See* § 8–43–308, 3 C.R.S. (1997). These grounds include, *inter alia*, "that the findings of fact do not support the order," or "that the award or denial of benefits is not supported by applicable law." *Id.* Where the findings of fact are supported by substantial evidence, they may not be disturbed on appeal. *See id.* The substantial evidence test requires courts to defer to the resolution of conflicts in the evidence, the credibility determinations, and the plausible inferences drawn from the evidence by the ALJ when those findings have been accepted by the ICAO. *See Christie I*, 919 P.2d at 860.

We conclude that applicable law supports an award of PTD benefits based, in part, upon consideration of that employment which is reasonably available to the claimant. *See* discussion *supra* Part II.C. Thus, the award of PTD benefits to claimants Bymer, Godinez and Pasillas may be set aside only if the factual findings in each case are unsupported by substantial evidence. In none of these consolidated cases do the Employers maintain that the factual findings are unsupported. Each of the PTD awards was based upon competent evidence, including reports by vocational experts, that the claimant, due to his or her particular circumstances, was unable to secure employment. *See Bymer*, No. 96CA0041, slip op. at 2; *Brush Greenhouse*, 942 P.2d at 1279; *see also Spady Bros.*, 942 P.2d at 1342 (setting aside the order of the ICAO, not because of unsupported factual findings, but because of incorrect application of the law). Therefore, even where "the record contains conflicting evidence which would support contrary findings and conclusions," *Christie I*, 919 P.2d at 860, the factual findings and conclusions adopted by the ICAO in each of these cases are adequately supported by the record. Thus, the awards of PTD benefits may not be disturbed on appeal.

### III.

■ We hold that, in determining eligibility for PTD benefits, it is appropriate to consider various, well-settled human factors related to the claimant's ability to earn wages. These factors may include consideration of the claimant's commutable labor market or other analogous concept which depends upon the existence of employment that is reasonably available to the claimant under his or her particular circumstances. The court of appeals in *Bymer* and *Brush Greenhouse* correctly upheld PTD awards that were based upon these factors. Therefore, we affirm those judgments. The court of appeals in *Spady Bros.* set aside the PTD award in that case because the court erroneously held that the award was based on an inappropriate consideration. Therefore, we reverse the judgment of the court in *Spady Bros.*, and remand the case with directions to reinstate the PTD award.

KOURLIS, J., dissents, and VOLLACK, C.J., joins in the dissent.

Justice KOURLIS dissenting:

These cases deal with the determination of whether a worker can be classified as permanently and totally disabled not on the basis of injury or incapacity, but rather on the basis of whether the worker is unable to find work within his or her locality of residence. Because I believe that access to employment within the labor market where a claimant resides is not an appropriate factor to consider in awarding permanent total disability benefits, I respectfully dissent.

### I.

Under workers' compensation law, disability of a claimant is traditionally measured by two components: medical (or functional) incapacity and earning impairment. *See Byouk v. Industrial Comm'n of Colo.*, 106 Colo. 430, 433–34, 105 P.2d 1087, 1089 (1940); 4 Arthur Larson, *Larson's Workers' Compensation Law* § 57.11 (1997). The first component refers to an employee's physical ability to perform work, while the second refers to the ability to secure work. Thus, the term disability, and in particular, perma-

nent total disability (PTD), has not been limited to consideration of medical factors, but necessarily encompasses the various factors relevant to a particular employee's ability to obtain work. *See Best–Way Concrete Co. v. Baumgartner,* 908 P.2d 1194, 1196 (Colo.App.1995).

Prior to the 1991 amendments to our Workers' Compensation Act, the legislature defined certain "human" factors appropriate to a consideration of permanent partial disability. *See* § 8–51–108, 3B C.R.S. (1986). In *Casa Bonita Restaurant v. Industrial Comm'n,* 624 P.2d 1340 (Colo.App.1981), the court of appeals applied those statutory factors to a determination of PTD and concluded that the "human" factors used to gauge a particular employee's ability to secure work included "the general physical condition and mental training, ability, former employment, and education of the injured employee." *See Casa Bonita,* 624 P.2d at 1342 (citing § 8–51–108, 3B C.R.S. (1986)). Significantly, these factors identified by the legislature and adopted in the cases related to the personal attributes of the employee rather than to market conditions.

Under the old law, the court of appeals decided one case in which it specifically held that a claimant who was unable to find suitable employment in his local community was permanently totally disabled. *See Gruntmeir v. Tempel & Esgar, Inc.,* 730 P.2d 893, 894 (Colo.App.1986); *see also Prestige Painting & Decorating, Inc. v. Mitchusson,* 825 P.2d 1049, 1050 (Colo.App.1991)(asserting in dicta that the community where a claimant resides is a proper consideration relating to permanent total disability). *Gruntmeir* cites no authority and makes no analysis whatsoever as to why this consideration is appropriate. I believe that *Gruntmeir,* devoid as it is of legal analysis on the issue, was incorrectly decided even prior to the 1991 amendments. Since the amendments, however, the case against consideration of this factor has become even stronger.

In the 1991 amendments to the Worker's Compensation Act, the General Assembly provided a statutory definition of permanent total disability:

" Permanent total disability" means the employee is unable to earn any wages in the same or other employment.

§ 8–40–201(16.5)(a), 3 C.R.S. (1997).

The question before the court today is whether that new definition directs or permits consideration of a claimant's commutable labor market in determining PTD. I agree with the Majority that the statutory language is ambiguous. I do not agree, however, that the legislative history provides support for the Majority's position. To the contrary, I believe that the legislative history clearly reflects otherwise.

## II.

To begin with, the 1991 amendments restrict PTD benefits to those unable to earn "any wage," and persons employable outside their commutable labor markets are, in fact, capable of earning a wage.

The legislative history of the 1991 amendments "indicates that the definition of PTD in [the 1991 amendments] was intended to 'tighten' and restrict eligibility for PTD benefits." *McKinney v. Industrial Claim Appeals Office,* 894 P.2d 42, 45 (Colo.App.1995). This intent to restrict eligibility would plainly appear to support the position that the 1991 amendments preclude consideration of a claimant's labor market. However, the Majority concludes that this restrictive intent is narrowly focused on ensuring that PTD benefits would be limited to those who could not earn "any wages" rather than, as under the broader, previous definition, those who might be able to earn a small amount of wages. *See* Maj. op. at 555–556 (citing *Hobbs v. Industrial Claim Appeals Office,* 804 P.2d 210, 212 (Colo.App.1990)).

The Majority cites two cases which contrast the old PTD determination with the new one under the 1991 amendments. *See* Maj. op. at 556 (citing *Christie v. Coors Transp. Co.,* 919 P.2d 857 (Colo.App.1996); *McKinney,* 894 P.2d at 45). These cases considered the effect of the new amendments as they pertained to individuals who retained some earning capacity. *See Christie,* 919 P.2d at 860; *McKinney,* 894 P.2d at 45. Both cases concluded that the effect of the

new amendments was to prevent those capable of earning "any wages" from being declared PTD. *See Christie*, 919 P.2d at 860; *McKinney*, 894 P.2d at 45. In neither case was the court asked to consider whether a person capable of earning a wage outside her commutable labor market was nonetheless incapable of earning "any wage" under the new law; however these cases conclude that the legislative intent under the 1991 amendments was to prevent those capable of earning a wage from receiving PTD benefits. There is no indication that the legislature was concerned solely with this distinction to the exclusion of any other methods by which potential wage earners might receive PTD benefits. I submit that where claimants who are capable of earning a wage outside their commutable labor market are allowed to receive PTD benefits, then the legislative purpose to allow PTD only to those persons incapable of earning "any wage" has been thwarted.

Exclusion of labor market considerations certainly better serves the purpose of assuring that individuals who are physically capable of working are not declared PTD. Inclusion of labor market considerations can lead to the anomalous result of declaring a claimant permanently totally disabled when, if he or she moved to another area, he or she would be readily employable. Accordingly, I believe that the legislative history indicating an intent to restrict benefits to those incapable of earning "any wage" militates against allowing PTD for those capable of earning wages outside their labor markets.

### III.

Finally, it simply does not make sense to describe market conditions as a "human" factor, nor does it make sense to incorporate market considerations into an analysis of an individual's capabilities to earn any wage.

In considering whether a claimant may find suitable employment, we do not, for example, ask whether the potential employer or employers will remain financially sound in order to sustain the claimant's employment. *Cf. Lucero v. Climax Molybdenum Co.*, 732 P.2d 642 (Colo.1987)(affirming the court of

appeals' decision that claimants must show a change in physical or mental condition to reopen their claims, and could not base reopening on changed economic conditions). This type of outside force, or market condition, is not an appropriate part of the inquiry because it does not relate to that claimant's ability to secure work, but instead to changing and unpredictable market forces.

In *Lucero*, this court discussed the underlying theory of workers' compensation law:

> [We have recognized] the fundamental principle that the workers' compensation laws were designed to compensate for diminishment of a worker's earning capacity due to specified physical or mental injuries. *See, e.g.*, §§ 8-51-108(1), 8-52-102(1), 3B C.R.S. (1986). The laws are not intended to protect against diminishment of a worker's earning capacity due to mass layoffs and other external fluctuations in economic conditions. Workers' compensation should not become, by way of strained construction, unemployment insurance. *See Industrial Comm'n v. Baldwin*, 139 Colo. 268, 273, 338 P.2d 103, 105 (1959) (although Workmen's Compensation Act is to be liberally construed, "its provisions must not be pushed beyond the limits of their purpose, nor its funds diverted to those not clearly entitled thereto . . . .").

*Lucero*, 732 P.2d at 647. Although *Lucero* was interpreting language in the statutes regarding the reopening of claims, the court based its holding in part on broader doctrinal principles which are equally applicable to the court's analysis today.

It is not the function of workers' compensation law to forever insulate workers from all consequences of a work-related injury. It may be inconvenient for certain workers to move to a new market in order to find work, but such an inconvenience is suffered by most workers at some time in their careers for any of a variety of reasons. The workers' compensation law is not designed to alleviate all inconveniences. If a claimant who lives in a rural community is injured, that claimant may have to move to find work, just as

someone who is laid off may need to move.[1] We should be encouraging persons who can work to take measures to obtain a job, including, if necessary, moving to a larger market.

The 1991 amendments to the Act were intended to limit awards of permanent total disability to individuals unable to earn any wage. The focus should be upon the characteristics of the individual applying for benefits and his or her capacity to obtain employment in the future, not upon the market conditions in an industry or locality. Because the Majority's conclusion disserves the legislative policy of encouraging reemployment, I would reverse the court of appeals' decisions in *Bymer* and *Brush Greenhouse* and would affirm in *Spady Brothers,* thereby dissenting from the Majority.

I am authorized to state that VOLLACK, C.J., joins in this dissent.

---

1. Additionally, the Majority's analysis does disproportionately and unfairly impact rural employers, who must bear the costs of permanent disability benefits awarded to individuals who would be employable in a larger community.