25CA0995 Mosley-Stichter v ICAO 11-06-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0995
Industrial Claim Appeals Office of the State of Colorado
WC No. 5-178-127

---

Cherise M. Mosley-Stichter,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado, Denver Public Schools, and PMA Management Group,

Respondents.

---

ORDER AFFIRMED

Division VII
Opinion by JUDGE LUM
Tow and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 6, 2025

---

Cherise M. Mosley-Stichter, Pro Se

No Appearance for Respondent Industrial Claim Appeals Office

Ritsema Law, LLC, Alana McKenna, Denver, Colorado, for Respondents Denver Public Schools and PMA Management Group

¶ 1     In this workers' compensation action, Cherise M. Mosley-Stichter seeks review of an order denying her request for permanent total disability benefits.  We affirm.

## I.     Background

¶ 2     Mosley-Stichter worked for Denver Public Schools (Employer) as a paraprofessional.  On February 17, 2021, she suffered a work injury to her right knee when she knelt to assist a student.  A few days later, Authorized Treating Physician Jay Reinsma, M.D., diagnosed a right knee strain and prescribed physical therapy.  Dr. Reinsma also prescribed temporary restrictions on Mosley-Stichter's physical activities at work; specifically, he recommended that she (1) walk and stand for no more than three hours daily; (2) avoid walking on uneven terrain; and (3) avoid crawling, squatting, kneeling, and climbing.  When Mosley-Stichter returned to his clinic on March 19, 2021, reporting a resurgence of pain, Dr. Reinsma ordered an MRI.

¶ 3     Mosley-Stichter's MRI showed a mild acute or subacute MCL sprain and osteoarthritis.  She returned to Dr. Reinsma multiple times in April 2021, with varying degrees of pain and mobility.  In

May, Dr. Reinsma referred her to physiatrist, Dr. Fredric Zimmerman, D.O., to explore a possible injection.

### A. Permanent Work Restrictions and Additional Diagnoses

¶ 4    Dr. Zimmerman examined Mosley-Stichter on June 22, 2021. He diagnosed her with a right knee strain and mild chondromalacia/osteoarthritis of the knee joint, which he found her work injury had exacerbated.  Dr. Zimmerman prescribed a steroid injection in her right knee and a patellar support strap.

¶ 5    The next day, Dr. Reinsma assigned Mosley-Stichter permanent work restrictions.  Specifically, he recommended that Mosley-Stichter permanently avoid work requiring crawling, kneeling, squatting, or running.

¶ 6    Dr. Zimmerman administered a steroid injection to Mosley-Stichter's right knee in August 2021, but she found it ineffective. Per Dr. Reinsma's orders, Mosley-Stichter underwent a second MRI on September 30, 2021.  Dr. Reinsma noted the imaging showed no acute injuries.

¶ 7    In December 2021, Mosley-Stichter received an injection of a different medication (Synvisc) from Dr. Zimmerman but found it ineffective.  In a follow-up appointment, Dr. Reinsma noted they

were running out of treatment options and also remarked that Mosley-Stichter now appeared depressed.

¶ 8    Mosley-Stichter returned to Dr. Zimmerman in February 2022, reporting no relief in her symptoms. He determined that "there [was] nothing further to offer" her in the way of treatment so he released her from care. Dr. Zimmerman also diagnosed Mosley-Stichter with "adjustment disorder/depression."

¶ 9    Dr. Reinsma similarly released Mosley-Stichter from active care in March 2022, agreeing that no further treatment options remained. He also diagnosed her with chronic pain syndrome and again prescribed permanent work restrictions precluding kneeling, crawling, or squatting. Mosley-Stichter continued to see Dr. Reinsma through 2023 for medical maintenance purposes and medication refills. Dr. Reinsma continually reaffirmed his March 2022 prescription for permanent work restrictions.

### B.    Permanent Total Disability Benefits

¶ 10   In August 2024, Mosley-Stichter requested a hearing before the Office of Administrative Courts, to determine whether she was entitled to receive permanent total disability (PTD) benefits. At Employer's request, before the hearing, Mosley-Stichter underwent

a vocational assessment with Donna Ferris, M.A, to determine what, if any, jobs Mosley-Stichter could perform in light of her circumstances. In a report, Ms. Ferris concluded that Mosley-Stichter could perform multiple available jobs and therefore was not permanently and totally disabled.

¶ 11 Citing Ms. Ferris's conclusions and Mosley-Stichter's medical records, the presiding administrative law judge (ALJ) determined that Mosley-Stichter failed to meet her burden of demonstrating that she was permanently and totally disabled and therefore failed to prove entitlement to PTD benefits. The Panel affirmed the ALJ's order.

## II.     Discussion

¶ 12 Mosley-Stichter contends that the ALJ (1) failed to apply the correct legal standard and (2) overlooked or misapprehended certain evidence. For these reasons, she argues, the Panel erred by affirming the ALJ's order. We are not persuaded.

### A.     Standard of Review and Legal Principles

¶ 13 Under section 8-43-308, C.R.S. 2025, we may not disturb the ALJ's factual findings when they are "supported by substantial evidence," and we may only set aside the Panel's decision if (1) the

4

factual findings (as adopted by the Panel) are not sufficient to permit appellate review; (2) conflicts in the evidence are not resolved in the record; (3) the factual findings do not support the order; or (4) the award or denial of benefits is not supported by applicable law.

¶ 14     Substantial evidence is "probative, credible, and competent, of a character which would warrant a reasonable belief in the existence of facts supporting a particular finding, without regard to the existence of contradictory testimony or contrary inferences." *Rathburn v. Indus. Comm'n*, 566 P.2d 372, 373 (Colo. App. 1977). Assessing the weight, credibility, and sufficiency of such evidence is the ALJ's exclusive domain, and findings based on conflicting evidence are conclusive on review. *Delta Drywall v. Indus. Claim Appeals Off.*, 868 P.2d 1155, 1157 (Colo. App. 1993); *Rockwell Int'l v. Turnbull,* 802 P.2d 1182, 1183 (Colo. App. 1990).

¶ 15     A claimant is permanently and totally disabled if they are "unable to earn any wages in the same or other employment." § 8-40-201(16.5)(a), C.R.S. 2025.  This determination is highly fact-dependent and consequently varies according to the claimant's particular abilities and circumstances.  *Holly Nursing Care Ctr. v.*

*Indus. Claim Appeals Off.*, 992 P.2d 701, 703 (Colo. App. 1999). In determining whether a claimant is permanently and totally disabled, the ALJ may consider "human factors," including, but not limited to, the claimant's general physical condition, mental ability, age, employment history, education, and the availability of work which the claimant can perform. *Absolute Emp. Servs., Inc. v. Indus. Claim Appeals Off.*, 997 P.2d 1229, 1232-33 (Colo. App. 1999); *Weld Cnty. Sch. Dist. RE-12 v. Bymer*, 955 P.2d 550, 556 (Colo. 1998) (that the legislature replaced prior statutory language prescribing consideration of "human factors" with a system of medical impairment ratings and a schedule of injuries does not foreclose consideration of human factors in determining permanent total disability).

¶ 16    Importantly, in defining "permanent total disability," the Workers' Compensation Act unambiguously states that "the burden of proof shall be on the employee to prove that the employee is unable to earn any wages in the same or other employment." § 8-40-201(16.5); *see also Christie v. Coors Transp. Co.*, 919 P.2d 857, 860 (Colo. App. 1995), *aff'd*, 933 P.2d 1330 (Colo. 1997).

## B.    Analysis

¶ 17    Mosley-Stichter cites *Anderson v. Longmont Toyota*, 102 P.3d 323 (Colo. 2004), for the proposition that the ALJ must consider the "whole person," including chronic pain and psychological conditions, when determining a claimant's entitlement to PTD benefits.  She argues that the ALJ here failed to consider her "whole person," and, more specifically, "the combined impact of [her] physical disabilities, chronic pain, and adjustment disorder." However, *Anderson* does not discuss PTD benefits and is therefore inapposite.  *See id.* at 323.  To the extent an ALJ considers chronic pain and mental conditions in a PTD benefits analysis, that consideration is discretionary, not mandatory.  *See Bymer*, 955 P.2d at 556 (holding that the legislature did not intend to abrogate consideration of the "human factors" in a PTD benefits analysis); *Joslins Dry Goods Co. v. Indus. Claim Appeals Off.*, 21 P.3d 866, 868 (Colo. App. 2001) (in making a PTD determination, the ALJ "may" consider human factors (citing *Bymer*, 955 P.2d at 556)).

¶ 18    In any event, the ALJ expressly noted that he considered "various human factors, including [Mosley-Stichter's] physical condition, mental ability, age, employment history, education, and

7

availability of work" when evaluating her claim for PTD benefits. We perceive no legal error in the factors the ALJ considered. *See Joslins Dry Goods*, 21 P.3d at 868; *Holly Nursing*, 992 P.2d at 703.

¶ 19  Mosley-Stichter also appears to argue that the ALJ gave inadequate weight to medical records which, she argues, show it would be difficult for her to perform "even sedentary work on a sustained basis due to physical limitations, [c]hronic [p]ain, and [p]sychological distress." Similarly, we discern an assertion that the ALJ failed to assign sufficient significance to evidence of Mosley-Stichter's "limited transferable skill set." Finally, she notes that medication side effects have "caused a skin disfigurement" affecting her self-esteem and "making it difficult to perform with confidence," and we infer that she argues the ALJ erred in failing to consider this evidence.

¶ 20  As discussed above, we perceive no error in the factors the ALJ considered. Moreover, an ALJ need not address "evidence which [they] consider[] to be unpersuasive." *Magnetic Eng'g, Inc. v. Indus. Claim Appeals Off.*, 5 P.3d 385, 389 (Colo. App. 2000). Thus, we will not infer that the ALJ improperly overlooked any of the evidence. And to the extent Mosley-Stichter essentially asks us to

reweigh the evidence to reach a finding contrary to the ALJ's conclusion, we may not do so. *See Metro Moving & Storage v. Gussert*, 914 P.2d 411, 415 (Colo. App. 1995).

¶ 21　　We note that transcripts of the hearings are not part of the record, and therefore, we must presume that substantial evidence supports the ALJ's findings. *See* § 8-43-301(2)(b), C.R.S. 2025 (requiring the appellant to order a hearing transcript in connection with an appeal); *Nova v. Indus. Claim Appeals Off.*, 754 P.2d 800, 801 (Colo. App. 1988).

¶ 22　　Even without a transcript, substantial documentary evidence in the record — specifically, a vocational evaluation report and medical records — supports the ALJ's PTD findings. In her vocational evaluation, Ms. Ferris analyzed Mosley-Stichter's employment history and education and searched for jobs consistent with that background and the permanent restrictions Dr. Reinsma assigned Mosley-Stichter — e.g., jobs involving no kneeling, squatting, or crawling.

¶ 23　　Ms. Ferris noted that Mosley-Stichter had earned a high school diploma and her work experience included eighteen years as a paraprofessional in the Denver Public Schools. Ms. Ferris

identified multiple job opportunities, which required no additional education or physical exertion inconsistent with Dr. Reinsma's prescribed restrictions, and which offered on-the-job training. The available jobs she identified included "platform-generated" services facilitating meal delivery, and grocery shopping and delivery. Ms. Ferris noted that these positions also allow for "maximum flexibility with scheduling and delivery locations." Additionally, Ms. Ferris found an available position as a server at a senior living facility. Job responsibilities included "taking and delivering menu items, bussing and resetting tables, light janitorial tasks, and dishwashing." Finally, Ms. Ferris noted many available positions with casual- and fast-food establishments, which positions also offered on-the-job training and required no additional education.

¶ 24 The ALJ expressly found the evidence Ms. Ferris put forth "persuasive." He also credited Dr. Reinsma's determination regarding appropriate work restrictions for Mosley-Stichter. Specifically, the ALJ noted that Dr. Reinsma treated Mosley-Stichter over a period of years and that the restrictions he recommended remained consistent over that time. Together, the ALJ found, "[t]he medical records and persuasive opinion of M[s]. Ferris demonstrate

that employment exists that is reasonably available to [Mosley-Stichter] under her particular circumstances." And, "[c]onsidering various human factors, including [Mosley-Stichter's] physical condition, mental ability, age, employment history, education, and availability of work, reveals that there are a variety of jobs available in [Mosley-Stichter's] local labor market within her permanent work restrictions." **(F. p. 855)** The ALJ acted well within his discretion in crediting Ms. Ferris's and Dr. Reinsma's expert opinions, and we may not reweigh these opinions to overturn the ALJ's PTD benefits determination. *See Metro Moving & Storage*, 914 P.2d at 415.

### III. Disposition

We affirm the Panel's order.

JUDGE TOW and JUDGE MOULTRIE concur.